360 So.2d 73 (1978)
Hortensio DELGADO and Nellie Geraldine Delgado, His Wife, Petitioners,
v.
Robert R. STRONG and Julie Y. Strong, His Wife, Respondents.
No. 52304.
Supreme Court of Florida.
June 8, 1978.
Rehearing Denied July 25, 1978.
Kenneth G. Stevens of Dale & Stevens, Fort Lauderdale, for petitioners.
James W. Knight, Jr. of Huebner, Shaw & Bunnell, and Nancy Little Hoffmann, Fort Lauderdale, for respondents.
SUNDBERG, Justice.
This cause is before us on petition for writ of certiorari to review a decision of the District Court of Appeal, Fourth District, reported at 348 So.2d 56, which is alleged to be in conflict with Westerman v. Shell's City, Inc., 265 So.2d 43 (Fla. 1972), the latter case setting forth the rule that an appellate court may not substitute its judgment for that of a trial court by reevaluating the evidence. Jurisdiction vests in this Court pursuant to Article V, Section 3(b)(3), Florida Constitution.
*74 For the reasons hereinafter enunciated we quash the decision of the District Court of Appeal, Fourth District.
The facts of this case are reflected in the trial judge's recitation of the evidence introduced at a hearing on petitioners' complaint to foreclose a mortgage against respondents:
This cause raised the issue as to the rights of a mortgagee [petitioners] to accelerate a mortgage by reason of the failure of the mortgagor [respondents] to obtain insurance, deliver the policy to the mortgagee, and/or communicate to the mortgagee the status of mortgagor's efforts in obtaining and delivery of insurance. The facts, as revealed by the testimony and exhibits introduced, show that the mortgagors purchased a parcel of industrial property from the mortgagees in August, 1973, and that thereafter said premises were not insured as required by the terms of the mortgage until March 14, 1974. The evidence discloses that the mortgagors were unaware of their duty to insure or the fact it was not insured until approximately March 8, 1974, when plaintiffs' attorney advised the mortgagors that they were in default and that they did not have insurance currently in force. At this time mortgagors obtained the first policy of insurance, effective March 14, 1974. In the early part of May, 1974, the mortgagors and the mortgagees both received a Notice of Cancellation of the March 14, 1974 policy, which notice of cancellation became effective at noon on May 30, 1974. In early May, Mortgagors consulted the Coral Ridge Insurance Agency and requested such agency to write a new policy on the subject property. An application and letter requesting insurance were prepared and forwarded to the insurance carrier, which application requested the insurance effective May 31, 1974. The mortgagors offered testimony that an "oral binder" was issued effective May 30, 1974. On June 7, 1974, the plaintiff mortgagees consulted with their attorney and as a result caused this suit to be filed on June 13, 1974, alleging that a breach of the mortgage had occurred by reason of the defendants failing to provide insurance in accordance with the mortgage agreement and accelerating the balance of the mortgage. On June 14, 1974, the plaintiffs, not being aware of the alleged "oral binder" from Coral Ridge Insurance Agency, obtained their own insurance at a net cost of $200.00 (after credit for return of the premium after cancellation of the foregoing policy). On July 12, 1974, the Coral Ridge Insurance Agency was advised by telephone that Aetna Insurance Company, to whom the application had been made, would not write the policy because the application did not cover and the defendants did not wish to insure the personalty on the subject property. This telephone conversation was subsequently confirmed by letter from Aetna Insurance to Coral Ridge Insurance Agency dated July 15, 1974.
Service of process on the defendants was obtained in this cause by an elisor on August 7, 1974. On August 7, 1974, the Coral Ridge Insurance Agency wrote a letter to the plaintiffs advising that they were covered by a binder and that Aetna Insurance Company would issue the policy of insurance "very shortly," notwithstanding the fact that Aetna by its letter of July 15, 1974, had already declined to write the coverage and considered the matter a "closed issue." On August 23, 1974, Coral Ridge Insurance Agency requested coverage by New York Central Mutual Fire Insurance Company, as a result of which an insurance policy was delivered to the plaintiffs on November 14, 1974, with coverage commencing May 31, 1974, at noon Standard Time.
Based upon the foregoing, the trial court made the following findings:
1. A technical default occurred by the failure of the defendants [respondents] to insure the subject property from noon May 30, 1974 to noon May 31, 1974.
2. It was the duty and burden of the defendants to obtain insurance and to deliver some written evidence of such insurance, in the form of a binder or policy *75 to the plaintiffs [petitioners] as of May 30, or at least within a reasonable time thereafter.
3. The evidence is undisputed that between May 30, 1974 and June 13, 1974 (the date on which suit was filed), the defendants failed to communicate the existence of the alleged "oral binder" to the plaintiffs, nor was a copy of same ever reduced to writing by Coral Ridge Insurance Agency. Such failure constitutes a breach of the defendants' obligation under the mortgage to furnish a policy of insurance "to be held by, and payable to, said mortgagee[s]."
4. It is extremely doubtful from the evidence and the Court, therefore, cannot find that the subject property was covered by insurance from July 15, 1974, to August 23, 1974.
5. The plaintiffs were justified in believing that the security for their mortgage was in jeopardy, and they were justified in accelerating the balance due on the mortgage and in obtaining their own insurance. The plaintiffs were also justified in consulting their attorneys and filing suit to protect their mortgage security.
6. The Court finds that the delivery of the New York Central Mutual Fire Insurance Company policy on November 14, 1974, did not constitute delivery within a reasonable time.
7. The Court also notes that there was a total lack of communication between the parties and that the defendants individually and their agents failed to notify the plaintiffs that insurance was being sought or otherwise to keep them informed of their progress in obtaining insurance.
8. The Court further finds that it was the duty and burden of the defendants to take the affirmative action to obtain insurance, to deliver the insurance policy to the plaintiffs, and to communicate their efforts and progress in accomplishing such ends.
Accordingly, the trial judge entered a final judgment of foreclosure in favor of petitioners.
It is well-established that courts of equity may refuse to foreclose a mortgage when an acceleration of the due date would render the acceleration unconscionable and the result would be inequitable and unjust. Clark v. Lachenmeier, 237 So.2d 583 (Fla.2d DCA 1970); Campbell v. Werner, 232 So.2d 252 (Fla. 3d DCA 1970); Schechtman v. Grobbel, 226 So.2d 1 (Fla. 2d DCA 1969). Consistent with this principle, courts have denied foreclosure of a mortgage where breach of the mortgage was merely a technical one and such breach did not place the security in jeopardy. See Martin v. McGee, 82 So.2d 736 (Fla. 1955); Schechtman v. Grobbel, supra. However, the presumption of correctness which surrounds a final judgment on review, Cohen v. Mohawk, Inc., 137 So.2d 222 (Fla. 1962); Williams v. Williams, 85 So.2d 225 (Fla. 1955); Staton v. Staton, 231 So.2d 531 (Fla. 1st DCA 1970); American Fidelity Fire Insurance Co. v. Clark, 174 So.2d 106 (Fla. 3d DCA 1965), compels the conclusion that the trial judge in the case sub judice properly applied this principle in determining the propriety of a judgment of foreclosure in favor of petitioners. Our conclusion is buttressed by the foregoing findings of the trial judge: Although he determined that "[a] technical default occurred by failure of the [respondents] to insure the subject property," he further found that petitioners "were justified in believing that the security for their mortgage was in jeopardy, and they were justified in accelerating the balance due on the mortgage... ." The effect of these findings of fact, coupled with entry of final judgment of foreclosure in favor of petitioners, is a determination that despite the technical nature of respondents' default, the security was in fact placed in jeopardy and, accordingly, foreclosure was proper. In short, the chancellor exercised his discretion based on his assessment of the testimony and evidence and based on an application of the correct rule of law.
On appeal, however, the District Court of Appeal, Fourth District, reversed the final *76 judgment and remanded the cause. An obvious reevaluation of the evidence in a de novo consideration thereof, contrary to the rule of Westerman v. Shell's City, Inc., supra, is apparent in the district court's holding that "the trial judge erred in entering final judgment of foreclosure of a mortgage on a harmless technical breach for it would be inequitable and unjust." This holding necessarily involves a finding, in clear contradiction of that of the trial court, that the security was not in fact placed in jeopardy as a result of respondents' breach. There being no express or apparent finding of an abuse of discretion by the trial court, the action of the appellate court is not justified.
Accordingly, the petition for writ of certiorari is granted, the decision of the District Court of Appeal, Fourth District, is quashed, and this cause is remanded to that court with instructions to reinstate the judgment of the trial court.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD and HATCHETT, JJ., concur.