PER CURIAM.
This is an appeal by two of three plaintiffs in a mortgage foreclosure action from a final judgment which limited the sum recoverable by imposing a penalty for usury. Although multiple issues were presented for our consideration, we need only consider the single dispositive issue of whether the court was correct in its finding that the testimony of plaintiffs’ accountant reflected a particular sum as the total interest paid or due from the commencement of the loan until its stated maturity date.
The record reflects that on January 8, 1975, three plaintiffs, Baker Mortgage Company, Cameron-Brown Investment Group and Beneficial Standard Mortgage Investors, filed a complaint to foreclose a mortgage which was originally arranged between Baker and the defendant, D. Mitchell Investments, Inc., on July 6, 1972. On November 8,1973, in consideration of an additional loan from Baker, Mitchell delivered a supplemental promissory note to Baker together with a modification to the mortgage. Plaintiffs Cameron and Beneficial participated with Baker in making the loans. Since May, 1974, the defendant was in default.
At trial, the primary issue to be resolved was whether or not the loan was usurious. Plaintiffs stipulated that the principal sum due on the mortgage loan was $3,242,000.00, and defendant conceded that the interest received, taken or extracted did not equal or exceed 25% per annum. Voluminous testimony was taken during a three-day trial. Some six months after the conclusion of the trial, the court rendered its final judgment. The trial judge made the following findings of facts:
*1107 1. On or about July 6, 1972, Baker, acting on behalf of itself as a participant and as agent for Cameron, entered into a construction loan transaction with Mitchell. The loan was evidenced by a promissory note dated July 6,1972, under which the sum of $2,000,000.00 was to be advanced. The note was secured by a mortgage of like date on the property . The note provided for payment of interest at 9% per annum, or 4% above the prime rate of [a certain bank], whichever amount was greater. Baker participated in the loan to the extent of $200,000.00 while Cameron participated to the extent of $1,800,000.00.
2. On November 8, 1973, Baker, acting on behalf of itself as a participant and as agent for Cameron and Beneficial, entered into a “Modification to Mortgage Deed” with Mitchell, and increased the mortgage loan to $3,250,000.00, which increase was then evidenced by an additional note for $1,250,000.00, dated November 8, 1973. This note provided for payment of interest of 14% per annum, or 4% above the prime rate of [the bank], whichever was the higher rate.
3. Advances were made under the mortgage and construction loan agreement of July 6, 1972, as modified by the agreement of November 8,1973, until the total sum of $3,242,000.00 was advanced to Mitchell.
4. Baker, a professional mortgage lender, continued to handle all the matters pertaining to the placing and servicing of said loan and the increase thereof, and was a participant in the loan to the extent of $200,000.00 while Cameron and Beneficial, both professional mortgage lenders, each participated equally in the ownership of the balance of the loan and advanced equal funds in connection with the funding of same.
5. Although the notes did not become due until May 8,1975, in May of 1974, the loan went into default and as of October 28, 1974, Baker on behalf of itself and its participants, made demand for past due interest, then unpaid in the sum of $252,-554.54, together with the unpaid principal amount of $3,242,000.00.
6. The total interest as computed by the Plaintiffs as being paid or due from the date of commencement of the loan up to and including the maturity date of the loan of May 8, 1975, as reflected by the testimony of the Plaintiffs’ accountant, was $996,055.09, of which sum $534,324.73 was paid.
7. With the exception of an accountant who was called by the Plaintiff, whose testimony was relied upon by this Court to determine the rate of interest charged, no single witness or officer of any of the three Plaintiff companies has testified or endeavored to explain or refute in any manner the testimony establishing the usurious nature of the transaction.
8. It has been established by unrefuted, clear and convincing testimony, that Baker, acting as a participant and as the authorized agent of Cameron and Beneficial, received, and in some instances divided with Cameron and Beneficial, the following additional fees, commissions, payments or extractions, each of which should be added to the interest paid or demanded:
A. A 2% discount to Baker and/or Cameron _$ 40,000.00
B. A disbursement fee to Baker_$ 2,000.00
C. A title insurance kickback to Baker, in excess of the cost of the title policy written by Baker_$ 7,184.50
D. A discount fee divided between Cameron and Beneficial _$ 48,750.00
E. A disbursement fee to Baker_$ 8,125.00
P. An administration fee to Baker $ 500.00
G. An application fee to Baker_$ 12,500.00
H. A brokerage commission fee to Baker, by way of a note and second mortgage on the property_$ 65,000.00
I. Improvements made to Baker’s office and paid for by Mitchell ... $ 3,000.00
J. Pee received by Baker and admitted by Affidavit as an extra interest charge _$ 15.500.00
Total additional charges_8202.550.50
(Citations omitted)
9.When the foregoing charges or extractions are added to the total interest paid, demanded or extracted, as reflected previously, in the amount of $996,055.09, the sum paid, demanded or extracted, as *1108 interest is the amount of $1,198,605.59. The maximum sum allowable as interest at 15% per annum for the sums outstanding from time to time, for the period of the loan as testified to by the Plaintiffs’ witness is the sum of $1,006,157.47.
10. The sums paid, demanded or extracted, exceed the maximum permitted by Florida Statute, by $192,442.62. The total cumulative interest, fees, commissions and extractions paid, demanded or extracted, when reduced to a percentage, yields a true rate of interest on the sums outstanding from time to time of 18.2% per annum.
11. That the taking of such interest, fees, commissions and/or extractions, is contrary to the provisions of Chapter 687, Florida Statutes, and is in violation thereof. The penalties as therein provided should be assessed against the Plaintiffs. (Emphasis supplied)
The court ruled that the plaintiffs hold a valid first mortgage on the property in the principal sum of $3,242,000.00. It then ordered that all interest on the principal balance be forfeited; that judgment be rendered in favor of the defendant on the usury counterclaim in the sum of $1,473,-750.44, double the amount of the interest paid, demanded or extracted, which sum is to be offset from the principal; and that the net sum due from the defendant to the plaintiffs in the amount of $1,768,249.56, shall be paid within 60 days, failing which the clerk of the court is to sell the property at public auction.
Examination of the final judgment reveals the following pertinent data:
1. The total interest “as computed by the Plaintiffs as being paid or due" was_$ 996,055.09
2. The total “additional charges” were $ 202,550.50
3. The total interest “paid, demanded or extracted” was_$1,198,605.59
4. The total allowable interest was_$1,006,157.47
5. The excess of the sums “paid, demanded or extracted” over the sums allowable was _$ 192,442.62[1]
The conclusion that the sums “paid, demanded or exacted” exceeded the allowable interest was premised on figures the court found were supplied by plaintiffs’ accountant, Mr. Murdock. Plaintiffs, appellants herein, vigorously refute this finding. They argue that Murdock did not actually testify that the sum of $996,055.09 was the total interest they considered due but rather this figure was based upon computations orchestrated by defense counsel during cross-examination. Since no usury would have occurred if the total interest sought was $192,442.62 [2] less than that computed by the court, it is essential that we examine Mur-dock’s testimony. After a review of Mur-dock’s direct and cross-examination testimony, we cannot agree with plaintiffs’ contention that the figures relied upon by the trial court in determining the subject transaction to be usurious were orchestrated by defense counsel. Although Mr. Murdock initially maintained that the $252,554.45 figure represented the total unpaid interest due as of May 8, 1975, after extensive cross-examination by able defense counsel, he finally recanted and admitted that the above figure represented only the interest due as of December 2, 1974 as evidenced by the following colloquy:
‡ ‡ *
“Q. Now, in making your computation as to what was due May 8 of 1975, did you consider that $252,554.55 of past due interest up to December 2 of 1974?
“A. Yes, I did.
“Q. Well, do I misunderstand then that your computation shows $252,554.55 as of May 8 of 1975?
“A. Yes.
“Q. Well, the complaint says at December 2, 1974, that amount was due, does it not?
“A. Yes, it does.
*1109 “Q. Then would not the interest be computed by adding on a daily per diem basis from December 2, 1974? You have until May 8 of 1975.
* * * * * *
“THE COURT: Do you understand the question?
“THE WITNESS: Yes, sir, I do.
“Q. [By Mr. Greenfield] Would it not?
“A. No, it would not.
“Q. You would not compute the interest in that fashion by adding to the amount that was due on December 2, 1974, on a per diem basis up to the date of May 8 of 1975?
“A. No sir.
“Q. Why not?
“THE WITNESS: Our review of Baker Mortgage’s records was for the fact, since this loan was on a variable rate to determine if we were entitled to additional interest, to determine if the interest was in excess of fifteen percent.
As a consequence, the last billed portion was deemed to be the appropriate amount of interest due.
“Q. So are you telling me that you found that the books of Baker reflected that as a matter of fact he was demanding and had collected interest in excess of fifteen percent?
“A. No, I didn’t say that he had.
“Q. Well, you have reduced down the amount that Mr. Baker computed, have you not?
“A. No, sir, I did not reduce the amount that Mr. Baker computed. The last amount billed for the books and records of Baker Mortgage Company is equivalent to the $252,000 as indicated.
“Q. As of December 2, 1974, is that correct?
“A. Our review was conducted as of 2-28-1975.

“Q. But at that time the indication in his books and records were that there was $252,554.55 due on December 2, 1974, is that not correct?

“A. That’s correct.
“Q. Would you tell us what the computation would be from December 2, 1974, up to May 8 of 1975, at the daily per annum interest rate of, I think, it is $1,333 per day?
[Emphasis Supplied]
******
“THE COURT: December 2, 1974, through May 8, 1975, sir.
“THE WITNESS: Sir, that would be 157 days at a rate of thirteen thirty-two thirty-three, and it would equal $209,-175.81.
“Q. [By Mr. Greenfield] When you add the $252,554.55 to the $209,175.81, what do you get, Mr. Murdock?
“A. Would you give me the first number again, please?
“Q. $252,554.55.
“A. $461,730.36.”
Furthermore, the record reflects the use by defense counsel of the $1,333 as the per diem rate of interest to compute the remainder of the outstanding interest due as of May 8, 1978 was the per diem interest rate computed by the plaintiffs as reflected in the affidavit of proof[3] filed by plaintiffs ($1,332.33 to be exact).
*1110 In addition, this affidavit indicates that the unpaid interest through August 31,1975 amounts to $568,682.80. If as plaintiffs argue the total interest due as of the maturity date (May 8, 1978) is $252,554.55, then the interest due (computed on the per diem rate of $1,332.33)[4] would only be $405,-772.50 in contrast to plaintiffs own figure of $568,682.80. The figures reflected in this affidavit lend support to defense counsel’s contention that the $252,554.55 did not represent the outstanding interest due as of May 8.
In the final analysis, we conclude there is competent substantial evidence as set out above to support the trial court’s determination of usury and, therefore, under the holdings in Westerman v. Shell’s City, Inc., 265 So.2d 43 (Fla.1972), Shaw v. Shaw, 334 So.2d 13 (Fla.1976), and more recently Delgado v. Strong, 360 So.2d 73 (Fla.Sup.Ct. opinion filed June 8, 1978), we must affirm the judgment inasmuch as it is not the province of this court to reevaluate the evidence or substitute our judgment for that of the trial court.
Affirmed.

. We note the existence of a minor, inconsequential arithmetical error of $5.50 in the court’s figures. The difference between $1,198,605.59 and $1,006,157.47 is $192,448.12.

. The court’s figures.

. ******
“BEFORE ME, the undersigned authority, personally appeared JOHN L. BAKER who, by me being first duly sworn upon oath, deposes and says:
“1. That the Affiant is President of the Plaintiff, BAKER MORTGAGE COMPANY, and Affiant has personal knowledge of all the circumstances and allegations of fact set forth and described in the Complaint in the said Cause and knows and herein states that same are true and correct.
“2. That with respect to the mortgage which Plaintiffs seek to foreclose in this Cause, the following amounts are due:
“(a) Unpaid principal balance on said mortgage and note as of May 7, 1975: $3,242,000.00 *1110 “(b) Unpaid interest through August 31, 1975: 568,682.80
“(c) Interest on said principal balance is accruing at the rate of 15% per annum which is a per diem of: $ 1.332.33
“(d) Clerk’s filing fee: 25.00
“(e) Sheriffs fees for service of process 225.00
“(f) Abstracting: 75.00”
* * * * * *
[Emphasis Supplied]

. $1,332.33 per diem interest rate _x 115 number of days from May 8 - 153,217.95 August 31, 1975 + 252.554.55 $405,772.50