370 So.2d 403 (1979)
John S. MURPHY, Appellant,
v.
Mary Lou Ragen MURPHY, Appellee.
Nos. 78-538, 78-737.
District Court of Appeal of Florida, Third District.
April 17, 1979.
Rehearing Denied May 25, 1979.
*404 Buchbinder & Elegant and Harris J. Buchbinder, Miami, Sibley, Giblin, Levenson & Glaser and Marion E. Sibley, Miami Beach, for appellant.
R. Stuart Huff, Miami, for appellee.
Before PEARSON, HENDRY and KEHOE, JJ.
PEARSON, Judge.
These appeals are by the husband from the property provisions of a final judgment dissolving his marriage to the appellee and from a subsequent order holding him in contempt.
The parties were married to each other in 1965. The wife had four children by a prior marriage; the husband had one. Two children were born of the marriage. The wife was, at the time of the marriage, the owner of considerable property. The husband had very little.[1] During the progress of the cause to final judgment, the parties entered into a stipulation providing for the custody and visitation rights for the two minor children of the marriage. The court provided for the husband to pay a portion of the support of the children. No point on appeal is directed to these provisions.
The basic conflict arises out of the wife's claim of a special equity in the real and personal property in which the husband held a record interest. The basis of the wife's claim was that she had provided the consideration for these properties from a source unconnected with the marriage. She claimed that she had periodically conveyed a portion of her record interest to the husband *405 at his insistence. She alleged that she had never intended a gift of any interest to survive coverture.
The record shows that shortly after the marriage, the wife executed deeds to the husband making him a joint owner on all of her properties. Later, a residence was purchased in Coral Gables and title was taken in an estate by the entireties. During the marriage, the wife received other property in Florida from the estate of her parents. The wife executed a quit claim deed transferring title in this property to the parties' joint names as tenants by the entireties.
The trial judge found as to the husband's conduct during the marriage:
"11. The Court is of the opinion that the equities in this cause are with the Wife, and against the Husband. It appears that he was never gainfully employed, and made no recognizable effort to support his Wife and family by his own efforts. The Husband was well educated, and in good health, but apparently chose to live on the monies received by his Wife from the estate of her first husband and from the estates of her deceased parents. The Husband will leave this marriage, some twelve years after its inception, better off financially than when he entered it. Virtually none of this improved status was achieved by his own efforts. Upon dissolution, this Court sees no reason to extend a lifetime of ease which he has done so little to earn."
Throughout the marriage, the parties had disputes which revolved around the treatment of the children each had at the time of their marriage. They separated on several occasions and each, at times, consulted counsel. In 1973, the parties separated and upon reconciliation, entered into an agreement which is central to the trial court's decision and appellant's first point on appeal.
As to this agreement, the trial judge found:
"10. On July 11th, 1974, the parties entered into a written `Agreement'. On that date, the parties held record title to all of the aforedescribed properties as tenants by the entireties. That ownership existed by virtue of quit-claim deeds which had been prepared by the Husband and executed by the Wife. The Agreement provided, inter alia, that the parties would execute such deeds as were necessary to vest title in them as tenants in common, with the Wife owning an undivided 56% and the Husband owning an undivided 44% therein. The Agreement did not effect the title to the home at 525 Hardee Road. When suit was commenced, the parties had in fact executed the requisite deeds. The Wife testified that her intent in executing that Agreement was (1) to be able to dispose of certain property by will, independent of entireties ownership; and, (2) to satisfy her Husband's insistence that she execute the Agreement. The Husband, and his former counsel at the time of the execution, testified that the Husband's sole intent in entering the agreement was to placate his Wife, who was insisting upon the Agreement. The Court has carefully reviewed that Agreement. Considering both the express language of the Agreement, and the intent of the parties as testified to, the Court finds nothing therein which would bar the claim which the Wife has here asserted. The Court finds it unnecessary at this time to determine the validity or enforceability of that Agreement, having determined that there is nothing in that Agreement material to this suit. The Husband's contention that the mere change in form of ownership from an entireties to a tenancy in common form, in itself, bars a special equities action, is without merit. It cannot be inferred from the Agreement that the Wife intended to relinquish any rights not expressly set forth therein. Davis v. Davis, 301 So.2d 154 (3rd DCA, 1974)." [Emphasis supplied].
As to the separate properties, the trial judge found:
1. The marital residence:
* * * * * *

*406 "Thus, it was impossible for any separate funds of the Husband's to have been used in the acquisition of the Coral Gables property in September of 1967. Therefore, this Court must find that the entire consideration for the acquisition of this property was provided by the Wife. The Husband made no attempt to show that the Wife intended to gift his record interest in this property to him. The Wife has established her special equity in her Husband's record interest to this home."
2. The Florida Keys property:
* * * * * *
"The Wife sustained her burden of establishing that the sole consideration for all of these properties was provided from her inheritance from the estates of her parent, James M. Ragen. The Wife clearly established that no cash consideration was paid for these parcels, but, rather, that she relinquished her interests in other estate properties to the remaining beneficiaries, as full consideration therefor. The evidence shows that each of these properties was originally deeded to the Wife, solely, in fee simple. There was testimony by the Husband that he provided some payment to one of the beneficiaries: Robert Ragen. That testimony by the Husband was vague and uncertain, and was unequivocably denied by Robert Ragen in his rebuttal testimony. It was admitted that the Husband himself prepared quit-claim deeds for the Wife to execute, vesting an interest in those properties in himself. The Husband made no attempt to show that the Wife possessed a gift intent in executing those conveyances. It should be noted that the record is devoid of any testimony as to services rendered by the Husband in and about the acquisition or maintenance of these specific properties. Therefore, the Wife has sustained her burden of establishing her special equity in the Husband's record interest to those properties."
* * * * * *
3. A mortgage on lots on Ponce de Leon Boulevard, Coral Gables, Florida:
* * * * * *
"The Wife sustained her burden of showing that this property was originally acquired from the estate of her mother, Ellen S. Ragen.
* * * * * *
"The Wife has established her special equity in her Husband's record interest to this property, which was a mortgagee's undivided 44% interest at the time this suit was commenced."
4. Bank deposits:
* * * * * *
"There is no sufficient evidence before the Court upon which the Court could make an equitable determination as to the rights of the parties to these funds, and the Court will leave the parties as it found them."
5. Purchase money mortgage on Chicago property:
* * * * * *
"It was admitted by both parties that this property was received by the Wife, before this marriage, as an inter vivos gift from her mother, Ellen S. Ragen. No additional consideration was ever paid for the acquisition of this property. The Husband made no attempt to show that the Wife intended to gift a portion of her interest in this property to him, when any conveyance thereof was effected. Therefore, the Wife has established her special equity in this property, and in the mortgage thereon."
Appellant-husband's first point urges that the agreement of July 11, 1974, constituted a post-nuptial property settlement agreement and that, therefore, the agreement was binding upon the court so that the husband must be awarded a 44% interest in all of the jointly-owned property.[2]
*407 A considerable portion of appellant's argument is directed to the position that this cause must be reversed because the trial judge found the agreement not to be material and, therefore, could not have considered it even to determine its relevancy. We think that a full reading of the trial judge's findings reflects the fact that he did consider the agreement and found that it was not binding as to a declaration of special equities in the dissolution proceedings. We interpret the court's finding to be as follows:
The court (1) has read the agreement, (2) because it is relevant to this case in light of the husband's argument that its effect in changing the basis of ownership of the real property concerned from that of entireties to that of common tenancy bars an equitable distribution. However, the court (3) finds this contention to be without merit and (4) because the agreement, therefore, places no restrictions on the court's equitably distributing the property, accordingly, (5) the court finds the agreement not to be material to this suit in this respect, and (6) finds it unnecessary to determine the validity and enforceability of the agreement.
We return to an examination of whether the court erred in failing to find the agreement binding as to special equities. The appellant relies upon the reasoning in Posner v. Posner, 233 So.2d 381 (Fla. 1970); Byrd v. Byrd, 324 So.2d 659 (Fla. 2d DCA 1975); Bailey v. Bailey, 300 So.2d 294 (Fla. 4th DCA 1974). These cases stand for the proposition that if a post-nuptial agreement is valid when tested by the stringent rules described in Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962), and, if, in addition, it is made to appear that the dissolution is prosecuted in good faith and the agreement cannot be said to promote the procurement of a divorce, then it should be held valid with regard to conditions existing at the time the agreement was made.
These cases all concern the effect of a valid agreement to settle property rights of the spouses in the estate of the other upon death. In the present instance, there was evidence before the court upon which the court made a positive finding that the agreement was not for the purpose of settling the property rights of the parties but was for the convenience of the parties in dealing with their jointly-held property during coverture.
In Clark v. Clark, 79 So.2d 426 (Fla. 1955), the court, in speaking of agreements between husband and wife, said:
* * * * * *
"The law in this jurisdiction is well settled that property settlement agreements between husband and wife, made in good faith, are valid and legal and should be construed and interpreted as other contracts. * * * In this, as in other contracts, our concern is the determination of the intention of the parties from the language used, consideration of surrounding circumstances, the objects to be accomplished, the other provisions in the agreement which might shed light upon the question and the occasion and circumstances under which it was entered into."
Following the law therein set out, the trial judge in this case considered the agreement of the parties and found that it was not a "property settlement" agreement in the normal sense that that phrase is ordinarily used in dissolution proceedings. The interpretation of a contract between the parties is a matter for the trial judge. See the principles of law in Shuford Development Company v. Chrysler Corporation, 449 F.2d 429, 432 (5th Cir.1971); and cf. the facts and law in Adler v. Nicholas, 381 F.2d 168, 171 (5th Cir.1967). The trial judge's interpretation will not be reversed by an appellate court unless it is clearly incorrect and unsupported by the evidence in the cause. Here, the trial judge determined the intention of the parties in the making of the agreement and the appellant has failed to *408 show wherein this determination of the intention of the contract is erroneous. Cf. Hall v. Hall, 135 So.2d 432 (Fla. 3d DCA 1961).
Appellant-husband's second point urges in general terms that the evidence does not support the final judgment. The argument under this point is directed to a review of the evidence of the mortgage upon the Ponce de Leon Boulevard property (item 3 of the finding as set out above). In order to overcome the trial court's findings upon a sufficiency of the evidence point, it is necessary for an appellant to go beyond merely showing that the more reasonable view of the evidence, in his opinion, supports a contrary finding. Where there is competent, substantial evidence to support the trial court's finding, it is not the province of this court to substitute its finding for that of the trial court. Bowles v. Mitchell Investments, Inc., 363 So.2d 1106, 1110 (Fla. 3d DCA 1978).
The third point urges that the parties exhibited a clear intent that each should have that portion of the property, i.e., 56% to the wife and 44% to the husband, without regard to the source of the money used to purchase the property. Faced with the July 11, 1974, agreement alone, the trial judge might well have made such a finding. We cannot hold that the agreement requires such a finding because of the testimony and evidence received and upon which the trial judge found that the parties did not intend by the agreement to make mutual gifts to each other. Appellant, in effect, reargues the issue presented in his first point which is, we think, determinative of the case.
The fourth point does not present error because of the holding of the Supreme Court of Florida in Ball v. Ball, 335 So.2d 5 (Fla. 1976), where the court said:
"The premise that record title bespeaks an equal division is, of course, only the starting point for a property division. Either spouse has the right to attempt to establish a `special equity' in the realty by reason of his or her extraordinary contribution toward its acquisition, either financially or through personal industry and service to the other party. The other party, of course, can negate the attempted showing or affirmatively attempt to show that a gift was intended. We are not now called upon to determine the range of circumstances which might create a special equity. Consistent with prior decisional law, however, we hold that a special equity is created by an unrebutted showing, as was developed here, that all of the consideration for property held as tenants by the entireties was supplied by one spouse from a source clearly unconnected with the marital relationship. In these cases the property should be awarded to that spouse, as if the tenancy were created solely for survivorship purposes during coverture, in the absence of contradictory evidence that a gift was intended."
The fifth and sixth points urge reversal of the trial court's order holding the husband in contempt. The order was entered after the final judgment. The judgment provides:
"H. John S. Murphy is ordered to forthwith make payment to Mary Lou Ragen Murphy, by cashier's or certified check, or in cash, in the amount of $108,190.73, together with interest thereon at 6% per annum from the date of this Order. This payment represents the net proceeds received, as mortgage payments, by John S. Muprhy on the `Ponce' purchase money mortgage from the day that suit was filed. This award of a special equity is computed as follows, to wit:
$14,722.78 as mortgage payments received by John S. Murphy for the months of May, June, July, and August.
$93,467.97 as proceeds received by John S. Murphy from the prepaid satisfaction of said mortgage, received in September, 1977.
"The Court specifically points out that this award reflects Petitioner's equity in the existing asset, i.e., the said purchase money mortgage, which asset was intact at the time that suit was commenced, as *409 distinguished from a recovery of monies received by the Husband from the Wife's properties before suit was commenced. Rey v. Rey, 279 So.2d 360 (4th DCA, 1973)." [Emphasis supplied]
On March 14, 1978, the husband filed a notice of appeal from the final judgment but after the order setting supersedeas bond had been entered the husband did not post supersedeas. On March 29, 1978, the wife filed a motion for contempt citation. On April 10, 1978, the court entered an order on the wife's application for contempt citation ordering the husband to pay the wife the sum of $108,190.73 together with interest thereon within ten days. The husband was ordered to appear for his deposition within seven days of April 4, 1978, for discovery and execution. The order carried a "self-executing" order for imprisonment. On April 28, 1978, the court entered its Order on Motion to Mitigate or Stay Order on Contempt and Order of Commitment without making any specific findings of the husband's ability to pay and ordered the husband to deliver himself to the Dade County Jail on May 1, 1978. This court granted a stay on May 4, 1978.
Points five and six arise on an interlocutory appeal by the husband from the order of April 10, 1978, which is the order upon the wife's application for contempt citation. This order provides, in pertinent part, as follows:
"2. The husband herein, JOHN S. MURPHY, shall have ten (10) days from April 4, 1978 in which to pay to MARY LOU RAGEN MURPHY, in cash or by cashier's check, the sum of ONE HUNDRED EIGHT THOUSAND ONE HUNDRED NINETY and 73/100ths ($108,190.73) DOLLARS, together with interest thereon through the date of payment.
"3. The Husband herein, JOHN S. MURPHY, shall submit to deposition in aid of execution by counsel for the Wife within seven (7) days of April 4, 1978.
"4. This Order shall be self-executing and should JOHN S. MURPHY fail to comply with the particulars hereof within the time allowed, he shall surrender himself to the Dade County Jail for a period of 10 (ten) days or a Writ of Bodily Attachment shall issue upon Affidavit and Notice of Non-Compliance.
"5. JOHN S. MURPHY may at any time during his incarceration, should it arise, purge himself of contempt by complying with the provisions of this Order."
Appellant-husband's points directed to this order urge first that the order is defective under the requirements for such an order as set forth in Adams v. Adams, 357 So.2d 264 (Fla. 3d DCA 1978). In that case, the court stated in reviewing a similar order:
"However, the commitment order is defective. The order fails to comply with the requirement that such an order include an affirmative finding that either the former husband presently had the ability to comply with the order, and willfully refused to do so, or that he previously had the ability to comply, but divested himself of that ability to frustrate the intent and purpose of the order."
* * * * * *
The appellee, in response, admits that the order is defective but maintains that the necessary findings are implicit in the order. We think that so serious a matter as the confinement in jail may not rest upon implications. Orders holding a person in contempt must show on their face the requisites for their validity and the record must support these elements. In the present instance, the direction to pay a large sum of money other than for alimony, child support or suit money within a short period of time upon the provision that failure to pay will result in confinement must be based upon a willful and continuing contempt of the authority of the court in order to avoid the stigma of imprisonment for debt. Cf. Corbin v. Etheridge, 296 So.2d 59 (Fla. 1st DCA 1974); and Howell v. Howell, 207 So.2d 507 (Fla. 2d DCA 1968).
Accordingly, for the reasons herein set forth, the final judgment is affirmed and the order of April 10, 1978, holding the appellant John S. Murphy in contempt is reversed.
Affirmed in part; reversed in part.
NOTES
[1] The trial judge found:

* * * * * *
"The Husband testified that he entered this marriage with approximately $30,000.00 in cash which he received from the estate of his first wife. From the sale of his real estate, referred to during the trial as the `Polk' property, he received approximately $5,000.00. The proceeds of this sale, together with his original funds and other incidental accretions, and together with accumulated interest on the entire amount, totalled approximately $39,000.00 by March of 1967. This total represented virtually all of the Husband's separate funds in this marriage at that time. On March 10, 1967, he deposited the sum of $39,000.00, in three separate accounts of $13,000.00 each, in his own name at Home Federal Savings and Loan Association of Chicago. These funds remained intact, without any withdrawals, until July 30, 1969."
* * * * * *
[2] In full, appellant's point is:

"In an action for dissolution of marriage, where an agreement in the nature of a property settlement agreement has been entered into between the parties, that agreement is considered to be valid and binding upon the parties where it is not tainted by fraud, overreaching, or non-disclosure, whether it is necessary for the court to determine its validity or non-validity or its enforceability, particularly as to the matters contained in the agreement as to the property rights of the parties?