HOBSON, Acting Chief Judge.
Appellant First Federal Savings and Loan Association of Englewood (First Federal) appeals a final summary judgment in a mortgage foreclosure action entered in favor of appellees Stephen H. Lockwood and Robert F. Murphy. The judgment denied appellant the right to foreclose its mortgage “for failure ... to allege and prove any impairment of its security resulting from [Lockwood’s violation of the due-on-sale provision of the mortgage instrument].” The judgment further held that federal regulations which purport to divest the state court of its equitable jurisdiction in real estate mortgage foreclosure actions must yield to traditional state equitable considerations which “require judicial inquiry as to whether said security was impaired by the sale in breach of the due-on-sale clause.” We affirm the holding of the final summary judgment.
On January 24, 1973, appellee Lockwood executed a promissory note and mortgage in favor of First Federal. The note evidenced Lockwood’s indebtedness to First Federal in the principal amount of $90,700. The mortgage created a first lien against certain real estate owned by Lockwood.
Although the mortgage instrument executed by Lockwood did not itself contain a due-on-sale clause, it incorporated by reference all of the terms contained in First Federal’s master form mortgage previously recorded in Sarasota County. The master form mortgage contained the following due-on-sale provision:
No conveyance of said property, or any part thereof, shall be made by Mortgagor without the written consent of Mortgagee. Should the property covered by this mortgage be conveyed by the Mortgagor, its successors or assigns, to any third person without the written consent of the Mortgagor [sic], then at the option of the Mortgagor [sic], the whole sum of principal and interest payable under the note or notes secured hereby shall become immediately due and payable.
In February, 1978, Lockwood and Murphy approached certain personnel at First Federal’s offices and explained that they were contemplating the sale and transfer of the encumbered land from Lockwood to Murphy. First Federal personnel advised both men that the sale would not be approved unless the interest rate specified in the loan document was adjusted to reflect the current interest rate in effect at the time of the conveyance. Although First Federal’s president stated in deposition that he had no opinion as to whether the security was impaired by the transfer, Lockwood and Murphy contended that Murphy was told that he could assume the mortgage if he agreed to pay a higher interest rate. Lockwood and Murphy refused to accept First Federal’s position and in March, 1978, Lockwood conveyed the subject real property to Murphy without the prior written consent of First Federal. Lockwood continued to make the mortgage payments.
Upon learning of the conveyance in May, 1978, First Federal notified Lockwood and Murphy that the debt would be accelerated in accordance with the provisions of the due-on-sale clause. Neither Lockwood nor Murphy responded to the notice of acceleration and on August 18, 1978, First Federal instituted a foreclosure action in the circuit court.
In its complaint, First Federal based its right to foreclose solely on the technical violation of the due-on-sale clause. No allegation was made that the security had been impaired. Lockwood and Murphy defended on the grounds that the security had not been impaired and that First Federal had no equitable right to accelerate the debt. First Federal answered that the due-on-sale clause was authorized by the rules and regulations of the Federal Home Loan Bank Board and was pre-emptive of any state law to the contrary.[1]
*158 Both sides moved for summary judgments and the court denied First Federal’s motion. Subsequently, the parties entered into a stipulation of facts, the effect of which was to leave no material issue of fact for determination by the court. The sole legal issue was whether the due-on-sale clause was enforceable, absent a showing of impairment of security. At final hearing the court entertained extensive argument and ruled in favor of Lockwood and Murphy, denying First Federal the right to foreclose the mortgage.
PARTIES’ POSITIONS
The argument presented by First Federal and the Federal Home Loan Bank Board (Bank Board), as amicus curiae, centers around the proposition that federal law exclusively governs the validity and exercisa-bility of due-on-sale clauses contained in loan instruments of federal savings and loan associations. The particular regulation sought to be enforced in this case [2] has been construed by the Bank Board in an advisory opinion which set out three reasons why federal associations must be allowed to exercise due-on-sale clauses:
1) To protect the security of the lender;
2) To allow the lender to adjust its loan portfolio in line with current interest rates;
3) To protect the “secondary mortgage market” in existing home loans.[3]
In support of its argument, First Federal contends that the Bank Board’s plenary authority to create and operate federal savings and loan associations was delegated to the Bank Board by Congress,[4] and the regulations promulgated under this authority have the force of federal law, with the result that states are not free to substitute their “notions of justice.”
Appellees, on the other hand, have challenged neither the validity of the due-on-sale clause nor the authority of the Bank Board to authorize and encourage its inclusion in the subject mortgage instrument. Rather, appellees’ position, joined by the Florida Association of Realtors as amicus curiae, is that, while due-on-sale clauses are not invalid per se, they may not be enforced in a state court of equitable jurisdiction absent a showing that the violation had impaired the security of the mortgage.
DISCUSSION
We have noted divergent lines of cases throughout the United States dealing with the issue of due-on-sale clause enforcement. The common thread running through the various theoretical approaches is that such clauses are considered restraints on the alienation of real property and are enforceable as reasonable restraints only if their enforcement is not inequitable and unjust under the circumstances. In other words, if the lender can demonstrate that his legitimate interests are threatened and the foreclosure is equitable under the circumstances, then the court may enforce the acceleration of the debt and subsequent foreclosure. *159 The divergence in theories is predicated, at least in part, on what legitimate interests will suffice to justify an automatic enforcement of the acceleration clause.
One line of cases specifically holds that there is no inequity in conditioning the lender’s consent to transfer on the transferee’s agreeing to pay an increased interest rate. This is considered a legitimate interest of the lender and in line with prudent business practices.[5]
Florida courts recognize that a lender has the right to accelerate a mortgage when the violation of the acceleration provision goes to the impairment of the lender’s security. They require that the lender in a foreclosure action bear the burden of demonstrating legitimate grounds for refusal to accept the transferee. By so doing, our courts protect borrowers by providing them with equitable defenses to inequitable accelerations by lenders. Clark v. Lachenmeier, 237 So.2d 583 (Fla.2d DCA 1970).[6] This approach is based on the historical purpose of acceleration clauses, which is to protect the security of lenders.
We note with interest that First Federal included in its master form mortgage the statement: “It is the intent of this mortgage to secure payment of said note . and to secure any other amounts that may be added to the mortgage indebtedness. . ” Thus, the sole purpose set out by First Federal deals with the protection of its security. There is no mention anywhere in the mortgage instrument that rising interest rates will subvert the stated intent and serve to justify First Federal’s attempt to gain a commercial advantage.
Other jurisdictions have approached the problem of enforcement from a similar standpoint, holding that acceleration clauses are not automatically enforceable but must be justified by a showing that the breach has impinged on the lender’s security interest.[7]
A close reading of the federal regulation in question reveals no procedural provisions for a distinct cause of action in federal court for enforcement purposes. Thus, a federal savings and loan seeking foreclosure against a Florida resident must *160 file its action in a Florida circuit court. When a foreclosure complaint is filed in a Florida court seeking an equitable remedy, it follows that traditional equitable defenses and considerations, long recognized by these courts, are available to all the litigants. “It is a strange argument that permits one to pick and choose what portion of the law binds him.” First National Bank of Logan v. Walker Bank & T. Co., 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966).
The true issue before us is not whether a due-on-sale clause may be authorized or even required in a federal association mortgage instrument, but whether the due-on-sale clause must be automatically enforced by a state court without regard to traditional principles of equity. In other words, where a federal savings and loan mortgage instrument includes an acceleration clause exercisable at the option of the lender, and the lender elects to activate the clause and, subsequently, to place the matter before a state court in an effort to obtain equitable relief in foreclosure, must the state court grant the desired relief without recourse to traditional equitable considerations? We answer the question by stating that a plaintiff who initiates a suit in equity must be subject to all of the applicable consequences of that action and not merely those to which he chooses to submit.[8] This is especially true in the instant case where applicable federal regulations exhibit a noticeable gap in the area of enforcement.
For the reasons set out above, we hold that the trial court was correct in denying First Federal the right to foreclose its mortgage absent any allegation or proof of impairment of security. We therefore affirm the final order.
AFFIRMED.
OTT, J., and CHEATWOOD, J. CLIFFORD, Associate Judge, concur.

. 12 C.F.R. § 545.6-11 (1975) is the Bank Board regulation governing the terms of the loan documents used by federal associations. This regulation provides:
(f) Due-on-sale clauses. A Federal association continues to have the power to include, as a matter of contract between it and the borrower, a provision in its loan instruments *158 whereby the association may, at its option, declare immediately due and payable all of the sums secured by the association’s security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association’s prior written consent. Except as provided in paragraph (g) of this section with respect to loans made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower, exercise by an association of such an acceleration option (hereafter called a due-on-sale clause) shall be governed exclusively by the terms of the contract between the association and the borrower, and all rights and remedies of the association and borrower thereto shall be fixed and governed by said contract.

. See regulation, supra, note 1.

. Advisory opinion of the Federal Home Loan Bank Board, Resolution No. 75-647 (July 30, 1975) [submitted in Schott v. Mission Fed. Sav. & Loan Ass'n, CIV-75-366 WMB, C.D.Cal.]

. In 1932, Congress passed the Federal Home Loan Bank Act, 12 U.S.C.A. §§ 1421-1449, creating the Federal Home Loan Bank Board and authorizing it to charter home loan banks. In 1933, the Home Owners’ Loan Act (HOLA), 12 U.S.C.A. §§ 1461-1468, was enacted to establish federally chartered savings and loan associations, organized and regulated by the Federal Home Loan Bank Board.

. Tierce v. APS Co., 382 So.2d 485 (Ala. 1979) rehearing denied Mar. 28, 1980; Malouff v. Midland Fed. Sav. & Loan Ass’n, 181 Colo. 294, 509 P.2d 1240 (1973); Baker v. Loves Park Sav. & Loan Ass’n, 61 Ill.2d 119, 333 N.E.2d 1 (1975); Stith v. Hudson City Sav. Inst., 63 Misc.2d 863, 313 N.Y.S.2d 804 (1970); Crockett v. First Fed. Sav. & Loan, 289 N.C. 620, 224 S.E.2d 580 (1976); Gunther v. White, 489 S.W.2d 529 (Tenn.1973). Although these cases recognize the lender’s legitimate interest in maintaining its loan portfolios at current interest rates, the court in Nichols v. Evans, 92 Misc.2d 938, 401 N.Y.S.2d 426 (1978), while noting the Stith v. Hudson decision, denied the mortgagee’s motion for summary judgment in a foreclosure action because, inter alia, there was no demonstration of impairment of security.

. Other Florida decisions have clearly relied on impairment of security as an essential element of a plaintiffs right to foreclose a mortgage. Delgado v. Strong, 360 So.2d 73 (Fla.1978); St. Martin v. McGee, 82 So.2d 736 (Fla.1955); Home Fed. Sav. & Loan Ass’n of Palm Beach v. English, 249 So.2d 707 (Fla.4th DCA 1971) (necessity of allegation of impairment of security recognized by trial court but appellate court found it unnecessary to rule on the question); Schechtman v. Grobbel, 226 So.2d 1 (Fla.2d DCA 1969)
Accord, Brown v. Avemco Inv. Corp., 603 F.2d 1367 (9th Cir.1979), in which the court stated:
Acceleration clauses are designed to protect the creditor from actions by the debtor which jeopardize or impair the creditor’s security. They are not to be used offensively, e.g., for the commercial advantage of the creditor. Acceleration is a harsh remedy with draconian consequences for the debtor. (Emphasis ours)
603 F.2d at 1376.

.Patton v. First Fed. Sav. & Loan Ass’n of Phoenix, 118 Ariz. 473, 578 P.2d 152 (1978); Baltimore Life Ins. Co. v. Harn, 15 Ariz.App. 78, 486 P.2d 190 (1971); Tucker v. Pulaski Fed. Sav. & Loan, 252 Ark. 849, 481 S.W.2d 725 (1972); Tucker v. Lassen Sav. & Loan Ass’n, 12 Cal.3d 629, 116 Cal.Rptr. 633, 526 P.2d 1169 (1974); Nichols v. Ann Arbor Fed. Sav. & Loan Ass’n, 73 Mich.App. 163, 250 N.W.2d 804 (1977); Sanders v. Hicks, 317 So.2d 61 (Miss.1975); Fidelity Land Dev. Corp. v. Rieder, 151 N.J.Super. 502, 377 A.2d 691 (1977); People’s Sav. Ass’n v. Standard Industries, Inc., 22 Ohio App.2d 35, 257 N.E.2d 406 (1970); Continental Fed. Sav. & Loan Ass’n v. Fetter, 564 P.2d 1013 (Okl.1977); Bellingham First Fed. Sav. & Loan Ass’n v. Garrison, 87 Wash.2d 437, 553 P.2d 1090 (1976).

. Counsel for the Federal Home Loan Bank Board stated at oral argument in this case that in the event national interest rates decreased significantly, federal savings and loan associations would not lower the interest rates on existing mortgages upon sale of the encumbered property.