420 So.2d 618 (1982)
CONSOLIDATED CAPITAL PROPERTIES, II, LTD., a California Limited Partnership, and Creekwood Village Associates, Ltd., a Florida Limited Partnership, Appellants,
v.
NATIONAL BANK OF NORTH AMERICA, a National Banking Association, Appellee.
No. 81-1554.
District Court of Appeal of Florida, Fifth District.
September 15, 1982.
Rehearing Denied November 4, 1982.
*619 Michael G. Williamson, of Maguire, Voohis & Wells, P.A., Orlando, for appellants.
Emery H. Rosenbluth, Jr., of Subin, Shams, Rosenbluth & Moran, P.A., Orlando, for appellee.
COBB, Judge.
This appeal arises from a judgment of foreclosure granted by the trial court on the counterclaim of the appellee, National Bank of North America (NBNA). The appellants, Consolidated Properties, II (Consolidated) and Creekwood Village Associates, Ltd. (Creekwood), were counter-defendants below. Creekwood was the mortgagor and Consolidated the purchaser of the mortgaged property. The sale to Consolidated without the prior written consent of NBNA was held to have effectively triggered a due-on-sale acceleration clause in the mortgage executed by Creekwood to NBNA.
In 1975 NBNA acquired the subject property, a 436-unit apartment complex known as Creekwood Villages, through foreclosure proceedings. In September, 1977, one Lawrence Gelb contacted Brian Haynes, an NBNA vice-president in charge of sale negotiations, in regard to the purchase of Creekwood Villages. Gelb and Jeffrey Kosow became the general partners of Creekwood Village Associates, Ltd., a partnership which subsequently was formed in March 1978 for the purpose of acquiring Creekwood Villages. Both parties concur with the trial judge's findings contained in paragraph 4 of the final judgment to the effect that Gelb and Kosow were very experienced in the acquisition, sale and financing of real property and that the negotiations for the purchase of Creekwood Villages were extensive and detailed. Additionally, the parties admit to negotiations over acceleration provisions contained in paragraph 36 of the mortgage, said provisions referred to by the parties collectively as the "due-on-sale clause." Said clause provides in relevant part:
If the mortgagor, without the prior written consent of the mortgagee, (i) sells ... the premises ... or (iii) any other lien or mortgage is placed upon the premises, or (iv) the premises is managed by any entity or person other than a mortgagor, ... then upon the happening of any of the foregoing, the mortgagee at its option may declare this mortgage and the indebtedness immediately due and payable.
Creekwood purchased the subject property from NBNA in March, 1978.
In April, 1980, Creekwood began discussions with Consolidated concerning Consolidated's acquisition of the subject property by the use of a wraparound mortgage which would leave NBNA's first mortgage in place. Acknowledging the acceleration clauses contained in the mortgage, the parties, in April, agreed to proceed with the sale regardless of NBNA's position.
At a meeting on May 8, 1980, Gelb informed Haynes of the proposed sale to Consolidated. Gelb gave Haynes a prospectus containing financial information regarding Consolidated. Haynes indicated that NBNA would require payment of the mortgage in full upon Creekwood's sale of the property. Gelb and Haynes disagreed over whether NBNA was entitled to accelerate the loan under these circumstances.
NBNA declined to approve the proposed sale on May 23, 1980. Haynes testified he had determined prior to the May 23 meeting that Consolidated's proposed wraparound mortgage would have a detrimental effect on the bank's position with respect to *620 cash flow on its loan. One Allen Schrieber, a senior vice-president of NBNA, who was the chairman of the committee responsible for the decision not to approve, testified that at the May 23 meeting the primary consideration for the decision to withhold consent was insufficient information concerning the validity of enforcing the due-on-sale clause and the financing of the transaction. On cross-examination, Schrieber testified to the effect that prior to the May 23 meeting he had glanced through the prospectus furnished by Gelb, and that he had not obtained further information regarding Consolidated or the proposed sale. On June 10, 1980, Creekwood sold the subject property to Consolidated. Subsequently, NBNA made a written demand to Creekwood for full repayment of the loan.
Appellants contend that the trial judge simply applied strict contract principles while ignoring the Florida decisional law on the enforceability of the due-on-sale clause contained in the mortgage. The appellee, in its reply brief, and the trial judge, in his final judgment, rely on two cases that support the proposition that a court should enforce the terms of contract documents freely entered into by competent parties. Rodeway Inns of America v. Alpaugh, 390 So.2d 370 (Fla. 2d DCA 1980); MacArthur v. North Palm Beach Utilities, Inc., 202 So.2d 181 (Fla. 1967). In Rodeway Inns, the Alpaughs leased their real property to Rodeway for purposes of building and operating a motel, and became signatories to a mortgage on the premises in order for Rodeway to obtain construction financing. Rodeway agreed to continue to remain liable for the mortgage in the event of its default under the lease. Following its default under the lease, Rodeway claimed that the construction of a motel on the property would unjustly enrich the Alpaughs and, therefore, it should be clear of its obligation to pay the mortgage. The court rejected Rodeway's position and affirmed the judgment for the Alpaughs, emphasizing the fact that Rodeway was fully aware of the legal consequences of its agreement and should not be relieved of its obligation merely because it proved burdensome or otherwise improvident.
In MacArthur, the defendant borrowed money from the plaintiff, MacArthur, to purchase plaintiff's real property for development, including the construction of a utility system. As part of the transaction, MacArthur was given an option to purchase the completed utility system. The Florida Supreme Court reversed the appellate and trial courts' holdings that the plaintiff was not entitled to specific performance of the option. The court stated that in view of the agreements, considerations and mutual covenants between the parties, the option was a binding obligation.
From MacArthur, appellee argues that the acceleration clause was an integral part of the consideration moving between NBNA and Creekwood, and as such is enforceable. In response, appellants contend that in light of Florida decisional law dealing with the due-on-sale clause contained in mortgages, the principles of the above-mentioned cases are not dispositive as neither case involved a mortgage foreclosure or a due-on-sale clause.
Whether an acceleration provision of a mortgage may be utilized as a basis for foreclosure is dependent upon the facts and upon whether the invocation of the acceleration clause would be inequitable under the circumstances. Clark v. Lachenmeier, 237 So.2d 583 (Fla. 2d DCA 1970). Appellee acknowledges the necessity of application of equity principles in the determination of whether the acceleration clause is enforceable, but it disagrees with appellants as to the appropriate test. Appellee contends that its acceleration and foreclosure must be sustained unless appellants can prove such acceleration is unconscionable and the result would be inequitable. Appellants insist that enforcement of the due-on-sale clause is proper only upon a showing by the mortgagee of harm to its security.
Both appellants and appellee cite the case of Delgado v. Strong, 360 So.2d 73 (Fla. 1978), wherein the Supreme Court stated:
It is well established that courts of equity may refuse to foreclose a mortgage when *621 an acceleration of the due date would render the acceleration unconscionable and the result would be inequitable and unjust... . Consistent with this principle, courts have denied foreclosure of a mortgage where breach of the mortgage was merely a technical one and such breach did not place the security in jeopardy.
Id. at 75. At the trial level in Delgado the court had ordered acceleration of a mortgage because the owner/borrower had not provided the insurance policy required, and the owner had obtained its own insurance. The Fourth District Court of Appeal held that the trial court erred in entering a final judgment of foreclosure on a harmless technical breach of the mortgage agreement.[1] On certiorari, the Florida Supreme Court quashed the decision of the district court and reinstated the judgment of the trial court, on the basis that there was competent evidence to support the trial judge's determination that the security was in fact placed in jeopardy.
In support of their contention that acceleration is only proper upon a showing of impairment of the lender's security, appellants rely heavily on First Federal Savings & Loan Ass'n. v. Lockwood, 385 So.2d 156 (Fla. 2d DCA 1980). Lockwood executed a mortgage containing a due-on-sale clause in favor of First Federal. Some five years later, Lockwood attempted to obtain First Federal's consent to a sale of the property whereupon First Federal stated that the purchaser could assume the existing mortgage if he agreed to pay a higher interest rate. The sale occurred, and First Federal accelerated the debt in accordance with the due-on-sale clause. Thereafter, First Federal instituted a foreclosure action. At trial, the parties stipulated to the facts, leaving the sole legal issue to be whether the due-on-sale clause was enforceable, absent a showing of impairment of security. The Second District, affirming the trial court's denial of relief to First Federal, adopted previous Florida decisions requiring the lender to demonstrate legitimate grounds for refusal to accept the transferee, in particular impairment of security, as an essential element of a plaintiff's right to foreclose a mortgage. Delgado v. Strong; St. Martin v. McGee, 82 So.2d 736 (Fla. 1955); Home Federal Savings & Loan Ass'n. of Palm Beach v. English, 249 So.2d 707 (Fla. 4th DCA 1971). Said the court:
We have noted divergent lines of cases throughout the United States dealing with the issue of due-on-sale clause enforcement. The common thread running through the various theoretical approaches is that such clauses are considered restraints on the alienation of real property and are enforceable as reasonable restraints only if their enforcement is not inequitable and unjust under the circumstances. In other words, if the lender can demonstrate that his legitimate interests are threatened and the foreclosure is equitable under the circumstances, then the court may enforce the acceleration of the debt and subsequent foreclosure. (Emphasis in original.)
Lockwood, 385 So.2d at 158.
Emphasizing the historical purpose of acceleration clauses  to protect the creditor from an action by the debtor which would jeopardize or impair the creditor's security  the Lockwood court, in footnote 6, at page 159, cited the following language in Brown v. Avemco, 603 F.2d 1367, 1376 (9th Cir.1979), as in accord with its position:
They (acceleration clauses) are not to be used offensively, e.g., for the commercial advantage of the creditor. Acceleration is a harsh remedy with draconian consequences for the debtor.
In an attempt to distinguish Lockwood, appellees state that the historical purpose of due-on-sale clauses is not applicable in this case, as NBNA's purpose is obtaining the due-on-sale clause was to insure receipt of its sale price, in cash, when Creekwood sold the property. From a reading of Lockwood and the decisions cited therein, it appears that the historical basis of protecting the lender's security is the only legal justification in Florida for such clauses. It is *622 apparent from the record that the trial judge in this case was aware of the requirement of a showing of impaired security, as he questioned NBNA's attorneys on the issue during closing argument, and he made a finding of impairment in his final ruling, contained in the final judgment.
The question left for consideration is whether the trial court's finding of impairment is supported by competent evidence. Raulerson v. Metzger, 375 So.2d 576 (Fla. 5th DCA 1979). The primary arguments of NBNA are that the terms of the mortgage were extensively negotiated between it and Creekwood; that the acceleration clause, as quoted above, is not unconscionable; and that the intent of the parties was that NBNA would receive its money in a shorter period of time than the ten year term of the mortgage.
The appellants do not contend that the acceleration clause is unconscionable, only that its function is limited to situations involving an impairment of security. Moreover, it is clear from the record that NBNA did not negotiate and obtain a shorter period for the loan and did not negotiate and obtain an automatic increase in interest upon resale by Creekwood. In fact, Creekwood initially opted for a thirty-year mortgage and this was negotiated down to ten years. Creekwood argues that allowing the bank to accelerate under these circumstances deprives it of the consideration for which it bargained: a ten-year loan and the right to sell the property without foreclosure with the consent, which cannot be unreasonably withheld, of the mortgagee.
Creekwood contends that the acceleration clause was intended only to protect against an impairment of the security, the traditional purpose of such clauses, and not to insure the bank a higher interest rate than that agreed upon by the parties at the time of execution of the mortgage. NBNA offered testimony of its officers at trial that the additional debt service created by the secondary financing would create a deficit cash flow, and that this could be harmful to property maintenance. It is abundantly clear, however, from the record and from the judgment, as augmented by comments of the trial judge, that the basis of the judgment is literal interpretation of the contract language  i.e., sale without written consent  and that NBNA's trial evidence revealed that the only "impairment" it relied upon as a basis for foreclosure was the fact that it wanted its 5.2 million dollars back to lend out at higher interest rates. The bank never expressed any interest in obtaining additional information as to the cash flow that would be required to handle the secondary financing or in regard to Consolidated's economic status or managerial capacity. Indeed, the undisputed evidence was that NBNA only gave cursory attention to information furnished to it in regard to Consolidated and in regard to projected improvement to its security.
As is apparent from the Lockwood opinion and the cases cited therein, there is no support for the view espoused by NBNA in this case. See also N. James Turner, Due-On-Sale Clause: Forcing the Issue, 56 Fla. B.J. 360 (April 1982). In the more recent case of Woodcrest Apartments, Ltd. v. IPA Realty, Etc., 397 So.2d 364 (Fla. 1st DCA 1981), the First District Court, citing to Lockwood, held that acceleration based on a "due-on-sale" clause in a mortgage requires that the mortgagee allege and prove an impairment of security. In stating the applicable Florida law in this regard, the Woodcrest opinion quoted the following language from Lockwood:
Florida courts recognize that a lender has the right to accelerate a mortgage when the violation fo the acceleration provision goes to the impairment of the lender's security. They require that the lender in a foreclosure action bear the burden of demonstrating legitimate grounds for refusal to accept the transferee. By so doing, our courts protect borrowers by providing them with equitable defenses to inequitable accelerations by lenders. Clark v. Lachenmeier, 237 So.2d 583 (Fla. 2d DCA 1970). This approach is based on the historical purpose of acceleration clauses, which is to protect the security of lenders.
*623 The recent opinion by the United States Supreme Court in Fidelity Federal Savings and Loan Association, et al. v. DeLaCuesta, ___ U.S. ___, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), is not applicable to the instant factual situation. Therein, the court held that under section 5(a) of the Home Owner's Loan Act of 1933 (HOLA), a regulation issued in 1976 by the Federal Home Loan Bank Board authorizing and effectuating due-on-sale requirements in association loan instruments pre-empts conflicting state law. That holding is applicable only to loans from federal loan associations. NBNA is not such an association.
We agree with the Lockwood and Woodcrest opinions, and therefore find the trial court below erred in granting foreclosure.
REVERSED.
DAUKSCH and COWART, JJ., concur.
NOTES
[1] Strong v. Delgado, 348 So.2d 56 (Fla. 4th DCA 1977).