207 So.2d 507 (1968)
William K. HOWELL, Appellant,
v.
Thelma K. HOWELL, Appellee.
No. 67-400.
District Court of Appeal of Florida. Second District.
February 28, 1968.
*508 John A. Sutton, of Sutton & Brown, Orlando, for appellant.
C. Arthur Yergey, of Yergey & Yergey, Orlando, for appellee.
PIERCE, Judge.
This is an appeal by appellant William K. Howell, defendant in the Court below, from a final order adjudging him in contempt of Court and allowing attorneys' fees to appellee Thelma K. Howell, plaintiff below.
After being married to each other for 13 1/2 years, plaintiff wife, on September 23, 1959, sued her husband in the Lake County Circuit Court for (1) a divorce and (2) "that the property settlement agreement * * * entered into * * * between the parties hereto on 22nd day of September, 1959, be * * * approved * * * by this Court in the final decree to be * * * entered herein, and that said parties be ordered * * * to * * * carry out the terms * * * thereof." A copy of the agreement referred to was attached to the complaint, and by appropriate allegation made a part thereof, such allegation reciting that "since their said separation, the parties have settled and adjusted their property rights, alimony, suit money, costs and attorneys fees" as per said written agreement. After making settlement and division of certain previous mutually-owned assets, *509 real and personal, the agreement then provided:
"The husband in full and complete settlement and discharge of all obligations to the wife for alimony, support and maintenance, dower or claim of the wife against the husband or against his estate, agrees to pay to the wife the sum of $100.00 per week commencing on Saturday, September 26, 1959 and continuing on the corresponding day of each week thereafter. * * * The husband agrees that there will be no abatement in the weekly payments hereinabove provided for any reason whatsoever except the remarriage of the wife, and that no earnings of income of the wife shall be deemed a change in her circumstances justifying or warranting any modification of the amount hereinabove stipulated to be paid weekly by the husband to the wife."
The agreement also provided that 
"The settlement agreement herein contained shall be in full and complete payment and satisfaction of all alimony, maintenance, support, court costs and counsel fees to the wife, and both parties agree that in the event a suit for absolute divorce is hereafter instituted, neither party will ask for, nor be entitled to any other settlement than as set forth herein. In the event of a final decree of divorce, the terms, covenants, conditions and provisions of this agreement shall be incorporated therein in haec verba or by reference".
On the matter of attorneys' fees, the agreement provided that the husband would pay his wife's attorneys the sum of $750.00, plus costs and expenses, for their services in representing her in connection with the agreement and the divorce proceedings contemplated by the parties, and also contained the following:
"It is also understood and agreed that in the event it is necessary for the wife to engage attorneys to prosecute any action for the enforcement of the terms of this agreement, then, and in that event, the husband shall be liable to the wife for reasonable attorneys fees and all Court costs incurred in connection therewith".
The wife thereupon proved up the otherwise uncontested case, and on November 18, 1959, final decree was entered by the late Judge T.G. Futch, which dissolved the marriage and further provided that 
"* * * the plaintiff be and she is hereby awarded alimony in the amount of $100.00 per week to be paid to her by the defendant, commencing on Saturday, September 26, 1959 and continuing on the corresponding day of each week thereafter until the further order of this Court."
Over three years later, on January 30, 1963, defendant husband filed petition for modification of the final decree in the form of "a reduction in alimony payments". On April 5, 1963, Judge W. Troy Hall, Jr., entered order denying the petition for modification, holding therein that 
"* * * a Property Settlement Agreement was * * * made a part of the Complaint in this cause and the execution thereof was admitted by the Answer of the Defendant; * * * that said Property Settlement Agreement was and is, in fact, a settlement of property rights between the parties whereby the wife relinquished special equities in her husband's business and transferred it and the legal title to other property jointly held by said parties as tenants by the entirety; * * * that the payment of the stipulated sum per month (designated in the Final Decree as `alimony') was the consideration to be paid the wife for the transfer of the wife's property rights; and that by reason thereof, the Property Settlement Agreement between the parties *510 hereto is not subject to modification nor cognizable under Section 65.15 Florida Statutes Annotated."
The husband appealed that order to this Court and on April 15, 1964, we affirmed in Howell v. Howell, Fla.App. 1964, 164 So.2d 231. The husband pursued the matter by application to the Supreme Court for certiorari, which that Court denied on October 29, 1964.
On November 19, 1964, upon petition filed by the former wife, Judge Hall issued rule requiring the husband to show cause why he should not be adjudged in contempt of Court for violating the agreement and the final decree in the respect of being in arrears to October 31, 1964, in the amount of $3,450.00. It seems by his own admission that for some 69 weeks prior to October 31, 1964, he had been paying her only $50.00 per week instead of the $100.00 per week he had agreed to and which he was required to pay by the final decree.
The husband, on December 8, 1964, filed a return and motion to quash the rule, the gist of which was that this 2nd District Court, by previously affirming the order dismissing his modification petition, had fixed the legal status of the original agreement as being an over-all property settlement agreement rather than an agreement to pay pure alimony; and that therefore the payments to the wife under the agreement constituted an ordinary contractual obligation enforceable only as between creditor and debtor and not by contempt proceedings as in default of alimony payments.
After considerable legal sparring, Judge Hall, on February 2, 1967, entered order adjudging the husband in contempt of Court, holding that the payments should be construed as alimony, and that the Court therefore could utilize contempt procedures to enforce payment. The order also allowed the wife's attorneys a fee of $1,200.00 for their services in the contempt proceedings. The husband has appealed the order to this Court, assigning as error the holding that contempt processes were available and also that the amount allowed for attorneys' fees was either without authority or was exorbitant.
We reverse as to the contempt proceedings and affirm as to the attorneys' fees.

A  The Contempt Proceeding.
The question of whether or not the contempt process may be utilized to enforce the payments from the husband to the wife depends, in this case as in every case, upon the judicial determination of whether such payments are for alimony or are made in pursuance of a property settlement agreement. Ofttimes, it is difficult for the Courts to determine whether the agreement between the parties should be construed as pure alimony or whether it is, in contemplation of law, a property settlement agreement. Fort v. Fort, Fla. 1956, 90 So.2d 313.
Generally, alimony means "nourishment" or "sustenance". Jacobs v. Jacobs, Fla. 1951, 50 So.2d 169; Fort v. Fort, supra. On the other hand, if the periodic payments which the husband agrees to make to his wife are in consideration of her relinquishment of valuable property rights, it is usually classified as a property settlement agreement. Underwood v. Underwood, Fla. 1953, 64 So.2d 281.
The parties, in their agreement here, inferentially used the word "alimony" in referring to the payments to the wife, and Judge Futch in his final decree actually called such payments "alimony". But this has no bearing on the issue of what it actually is. As was said in Underwood v. Underwood, supra, "* * * the use of the word `alimony' in the agreement and decree" is not conclusive; "[it] is not what *511 it is called but what it is that fixes its legal status. It is the substance and not the form which is controlling". (Emphasis in text).
In the instant appeal, much has been written in the briefs of the parties about the nature and character of the original agreement between them, the wife contending that payments thereunder were pure alimony and the husband contending that they were in effect monetary incidents to a property settlement agreement. The reason for their litigious acrimony is obvious: if the wife is correct, the payments, including the defaulted backlog, are subject to the potent remedy of contempt; while if the husband is correct, the payments are enforceable only as ordinary claims between creditor and debtor. Sedell v. Sedell, Fla. App. 1958, 100 So.2d 639; State v. Dowling, 1926, 92 Fla. 848, 110 So. 522; Tabas v. Hudson, Fla.App. 1965, 175 So.2d 224; 27B C.J.S. Divorce § 261, p. 104, § 300(3), p. 382; 17 Am.Jur. § 797; and annotation in 154 A.L.R. 443. See also State ex rel. Cahn v. Mason, Judge, 1941, 148 Fla. 264, 4 So.2d 255 and State ex rel. Gillham v. Phillips, Judge, Fla.App. 1966, 193 So.2d 26.
Curiously enough, the conflicting contentions of the parties have undergone a radical readjustment. In fact, the parties now contend the exact opposite from what they contended in the former appeal. There it was a question of the right of the husband to seek modification of the agreement and decree; here it is a question of availability of contempt. But the answer to each question rests now, and rested then, upon the same legal premise, namely, whether the payments constituted alimony or were a part of a property settlement agreement.
This Court, in the previous appeal, Howell v. Howell, supra (text 164 So.2d 231), settled that question. There we held:
"It is evident that although the chancellor did not expressly incorporate the agreement into the final decree, he did in fact accept and adopt the terms of the agreement as made by the parties. Neither the chancellor nor this court may remake a legal agreement executed in good faith for valid consideration. From the clear, concise and unambiguous terms of the contract, it is evident that the parties reached a genuine property transfer agreement of `all' the property listed therein which included jointly owned property as well as business property in which the wife had an interest.
* * * * * *
It is clear that the parties effected a complete contractual settlement, transfer, division and sale of their properties for a consideration definitely fixed for an expressed period of time. The chancellor could not reduce the agreed amounts on petition for modification without doing violence to the underlying contract (citing Underwood, Fort, and Vance v. Vance, 1940, 143 Fla. 513, 197 So. 128)." (Emphasis supplied.)
We affirmed the previous order of Judge Hall that "the amount of the periodic payments in question was stipulated by the parties in a valid and binding property settlement agreement and * * * was not subject to modification under Fla. Stat. § 65.15" (text 164 So.2d 232). (Emphasis supplied).
That determination by this Court became the "law of the case" as to the legal characteristics of the agreement. The rule in Florida as to "the law of the case", and the effect thereof, is condensed in 2 Fla. Jur. § 398 as follows:
"By `law of the case' is meant the principle that the question of law decided upon an appeal to a court of ultimate *512 resort must govern the case in the same court and the trial court through all subsequent stages of the proceeding. Or, as otherwise stated, whatever is once established between the same parties in the same case continued to be the law of the case, whether correct on general principles or not, so long as the facts on which such decision was predicated continued to be the facts of the case. Generally, therefore, points adjudicated by the appellate Court are no longer open for discussion or consideration."
The fact that the object of the former appeal was to determine the right of the husband to seek modification as to amount is without relevance. And likewise without relevance is the fact that the parties were urging then an interpretation of the agreement diametrically opposed to what they each are currently urging. We have here now the same parties, the same agreement, and the same issue as to legal categorization of the agreement.
Actually there is in the present appeal every reason to observe the rationale of "the law of the case". Before, the husband was prejudiced by our determination in being deprived of any right to modify. It would be manifestly unfair to now announce a diametrically opposite legal interpretation of the agreement and thereby penalize him on the "other side of the coin" by subjecting him to contempt. Both parties must abide by our former construction of the agreement. They both submitted the matter at that time to this Court in good faith and were mutually charged with the consequences of our decision.
The Chancellor laid emphasis on Solomon v. Solomon, 1941, 149 Fla. 174, 5 So.2d 265, but we find nothing in that case inconsistent with our views here expressed. In Solomon, the Supreme Court merely held that "after examining the whole plan set out in the agreement and the specific provisions" thereof it was determined that "the latter constituted alimony" and were not a part of a comprehensive property settlement agreement. In other words, that decision was forged by the facts of that particular case, just as the facts have forged our determination in the case sub judice.
Having arrived at the conclusion that we are bound, as likewise are the parties to this suit, by our former opinion in 164 So.2d 231, it automatically follows that the agreement, being a property settlement agreement, is not enforceable by contempt but only by the usual remedies available to a creditor against his debtor, one of the postulates of which is the inhibition of Sec. 16 of the Declaration of Rights, F.S.A., that "no person shall be imprisoned for debt * * *". All the other constitutional and statutory remedies customary in such cases may be availed of by the wife.

B  Allowance of Attorneys' Fees.
On the question of attorneys' fees allowed the wife by the Chancellor, it is established law in this State that such fees may be allowed in one of three instances only if: (1) it is provided by statute, or (2) it is fixed by contract, or (3) it is agreed to by the contesting parties. Dorner v. Red Top Cab & Baggage Co., 1948, 160 Fla. 882, 37 So.2d 160; Phoenix Indemnity Co. v. Union Finance Co., Fla. 1951, 54 So.2d 188; and Larson v. Warren, Fla. 1961, 132 So.2d 177.
While sub-section (1) does not apply and there is some question of (2), we think (3) does apply. The parties on February 3rd, 1965, stipulated in writing that "in the event the * * * Plaintiff is entitled to an allowance of attorney's fees from the Defendant * * * for the *513 services of her attorney in any of the proceedings * * * subsequent to the entry of the Final Decree * * * that the * * * Circuit Judge may exercise his own * * * discretion * * * in fixing the amount of any such allowance." This stipulation was entered into after the wife had applied for attorneys' fees for services rendered for her.
Pursuant to the stipulation the Chancellor on February 24, 1965, entered order allowing $2,000.00 as fees for services rendered in the contempt proceeding and also in the previous appellate proceedings incident to the attempted modification aforesaid. The contempt issue was then under advisement by the Chancellor, but upon entry of order allowing the fees, the husband appealed said order to this Court. We held on February 4, 1966 (Howell v. Howell, Fla.App. 1966, 183 So.2d 261) that because of the stipulation aforesaid "the Chancellor has the authority to fix reasonable attorney's fees for the last proceeding held before him" and remanded the cause "for the Chancellor to fix attorney's fees for * * * [such] last appearance before the Chancellor". The purport of our holding was that the Chancellor could fix fees for services in the lower Court contempt proceeding but was without authority to allow fees for services rendered in the appellate courts. We remanded the cause for a new order restricted to the contempt proceeding. A year later the Chancellor fixed a new allowance of $1,200.00, which was contained in his contempt order here appealed. The propriety, as well as the amount, of this allowance is assigned as error.
In view of the stipulation of the parties aforesaid, we hold that the Chancellor not only had the right, but in the light of our opinion in 183 So.2d 261 the duty, to make the award. What the rights of the parties would be if they had not so stipulated in writing is academic. They did so stipulate, this Court did so rule, and the Chancellor did so fix.
And we cannot say, in the light of the extensive litigation before the Chancellor on the contempt issue, both prior and subsequent to our order of February 4, 1966, as reflected in the record here, that his present award is excessive, and we affirm as to such portion of the order.
In accordance with the foregoing, the order appealed from is affirmed in part and reversed in part and the cause remanded for entry of new order not inconsistent herewith.
Affirmed in part and reversed in part.
LILES, C.J., and HOBSON, J., concur.