23 So.3d 131 (2009)
Christine Rose PIPITONE, n/k/a Christine Diaz, Appellant,
v.
Charles Anthony PIPITONE, Appellee.
No. 2D08-5032.
District Court of Appeal of Florida, Second District.
August 28, 2009.
*133 Lisa P. Kirby of Lisa P. Kirby, P.A., Naples, for Appellant.
Antonio J. Perez-Benitoa of Antonio J. Perez-Benitoa, P.A., Naples, for Appellee.
*134 LaROSE, Judge.
Christine Diaz, f/k/a Christine Pipitone, appeals a postjudgment order denying her motion to enforce the final judgment of dissolution of marriage to Charles Pipitone, and the incorporated marital settlement agreement (MSA). The trial court erroneously ruled that the MSA provides the exclusive means available to enforce payment of lump sum alimony. We reverse.
We review the interpretation of the MSA de novo. See Johnson v. Johnson, 848 So.2d 1272, 1273 (Fla. 2d DCA 2003). As relevant here, the MSA provides as follows:
VI. ALIMONY.

As and for non-modifiable lump sum alimony, the Husband shall pay to the Wife the sum of $100,000.00 at the rate of $2,083.33 per month for forty-eight (48) months. Said payment shall commence on May 15, 2006, and shall continue to be paid on the 1st day of each month thereafter for the next forty-seven (47) consecutive months. Time is and shall be of the essence regarding the delivery of these payments. Said alimony payment is taxable to the Wife and deductible by the Husband for Federal Income Tax purposes.
As and for additional non-modifiable lump sum alimony, the Husband shall pay to the Wife the sum of $75,000.00 at the rate of $1,100.00 per month for sixty-eight plus (68 + ) months. Said payment shall commence on May 15, 2006, and shall continue to be paid on the 1st day of each month thereafter for the next sixty-seven (67) months, plus a final partial payment thereafter, until paid in full. Said alimony payment is taxable to the Wife and deductible by the Husband for Federal Income Tax purposes. The parties specifically agree that this lump sum alimony amount is in consideration for the Husband's one-half (1/2) obligation on the Home Equity Line of Credit, for which the Wife is taking full responsibility hereunder, attendant to the marital residence located at 152 Leland Way, Marco Island, Florida.
All alimony payments required herein shall be made through the Court Registry System.
By use of the term "non-modifiable" herein, the Husband acknowledges there are no circumstances which will provide him an excuse not to pay these sums to the Wife. If she dies, he shall pay her Estate; if he dies, his Estate shall pay her; and if she remarries or cohabitates in a marriage-like relationship, he still shall be obligated to pay the alimony described hereinabove. The Wife acknowledges there are no circumstances under which she may seek a higher monthly payment or a payout for a longer duration.
The Wife may secure these alimony obligations by placing a lien against the non-real estate assets (including all equipment and inventory, but excluding cash receivables) owned by Marco Cabinets, Inc. Any and all expenses attendant to this lien(s) shall be borne by the Wife.
. . . .
XX. CHILD SUPPORT, DAY CARE & HEALTH INSURANCE.

The parties have each filed Financial Affidavits with the Court and the parties agree that the Husband shall pay to the Wife the sum of $450.00 per child, per month, for a total of $1,800 per month, beginning May 1, 2006. Said amount shall be paid and delivered to the Wife no later than the 15th day of each month, until such time as the children reach the age of majority, become emancipated, die or graduate high school, *135 whichever occurs later. Said payments shall be paid directly to the Wife. Time is and shall be of the essence with respect to these payments.
(Emphasis added.)
Mr. Pipitone is in arrears. Thus, Ms. Diaz asked the trial court to compel payment, to hold Mr. Pipitone in contempt, to award her "other such relief as is proper," and to award her attorney's fees. In denying relief, the trial court ruled that the MSA "provides the Former Wife with the exclusive remedy regarding enforcement of lump sum alimony." Ms. Diaz argues that the lien provision of the MSA is not her exclusive remedy; she should be allowed to pursue other remedies such as a money judgment and contempt. Mr. Pipitone agrees that the trial court erred in concluding that the MSA provides the exclusive remedy. He argues, however, that contempt is not an available remedy.

Exclusivity of Lien Remedy
The MSA provides that Ms. Diaz may secure her alimony payments through a lien against various non-real estate assets of Mr. Pipitone's business. Apparently, she did not do so. Had she pursued a lien, Ms. Diaz could have foreclosed to recover the arrearages. See Black v. Miller, 219 So.2d 106, 109 (Fla. 3d DCA 1969) (stating foreclosure on security lien was available remedy to collect past due alimony); cf. Partridge v. Partridge, 912 So.2d 649, 650 (Fla. 4th DCA 2005) (holding contempt justified foreclosure on equitable lien on former husband's property claimed as homestead). But, she was not obligated to pursue this remedy.
In the MSA, Ms. Diaz and Mr. Pipitone chose the word "may," not words of exclusivity such as "shall," "must," or "may only." See, e.g., Granados Quinones v. Swiss Bank Corp., S.A., 509 So.2d 273 (Fla.1987) (contrasting permissive contract language using "may" with mandatory language using "shall" or "may only"); Am. Boxing & Athletic Ass'n, Inc. v. Young, 911 So.2d 862, 865 (Fla. 2d DCA 2005) (contrasting "may" with "must" and "shall"); cf. Regal Kitchens, Inc. v. O'Connor & Taylor Condo. Constr., Inc., 894 So.2d 288, 291 (Fla. 3d DCA 2005) (holding provisions that a party "may" choose a particular venue to enforce a contractual right are not exclusive). Their agreement established a way that Ms. Diaz could ensure alimony payment. The lien remedy, therefore, is not exclusive. See id. at 291-92. The trial court erred in ruling to the contrary. We must, therefore, reverse and remand for further proceedings. Because lump sum alimony can pose seemingly insoluble problems in the context of enforcement proceedings,[1] we offer further guidance to the trial court.
The MSA provides two nonmodifiable amounts of lump sum alimony payable in monthly installments. For federal income tax purposes, the payments are income to Ms. Diaz and deductions to Mr. Pipitone. The $75,000 amount is consideration for Ms. Diaz's assumption of Mr. Pipitone's credit line obligation. This amount reflects an equitable distribution of property; contempt is not a remedy available for nonpayment. See Cone v. Gillson, 861 *136 So.2d 1210, 1210 (Fla. 2d DCA 2003). Ms. Diaz agrees. The MSA, however, does not characterize the $100,000 amount. Ms. Diaz contends that it is for support, and that contempt is an available remedy for nonpayment. See Bongiorno v. Yule, 920 So.2d 1209, 1210 (Fla. 1st DCA 2006) (holding that lump sum alimony is enforceable by contempt if intended for support rather than property settlement).

Equitable Distribution or Support
Lump sum alimony may provide for equitable distribution of property or for support. Miulli v. Miulli, 832 So.2d 963 (Fla. 2d DCA 2002); Noe v. Noe, 431 So.2d 657, 658 (Fla. 2d DCA 1983). The remedies available to enforce payment depend on the characterization of the alimony. "Alimony payments [for support], even though they be lump sum payable in installments, are enforceable by contempt proceedings." English v. Galbreath, 462 So.2d 876, 877 (Fla. 2d DCA 1985) (citing Howell v. Howell, 207 So.2d 507 (Fla. 2d DCA 1968)). Alternatively, a trial court may award a money judgment for default, although contempt is the usual remedy. Robinson v. Robinson, 154 Fla. 464, 18 So.2d 29, 30 (1944) (citing Vinson v. Vinson, 139 Fla. 146, 190 So. 454 (1939)). Payments for equitable distribution, on the other hand, are not enforceable by contempt, Cone, 861 So.2d at 1210, "but only by the usual remedies available to a creditor against his debtor." Howell v. Howell, 207 So.2d 507, 510-12 (Fla. 2d DCA 1968); see also Masterman v. Masterman, 835 So.2d 1261, 1261 (Fla. 2d DCA 2003); Bongiorno, 920 So.2d at 1210 (holding contempt may not be used to enforce lump sum alimony award effecting property distribution); Veiga v. State, 561 So.2d 1335, 1336 (Fla. 5th DCA 1990) (holding property division awards not enforceable by contempt, but only remedies are those available to creditors against debtors) (citing Underwood v. Underwood, 64 So.2d 281 (Fla.1953); Howell, 207 So.2d 507); Rosenberg v. Rosenberg, 452 So.2d 620, 621 (Fla. 3d DCA 1984).
Ordinarily, the trial court specifies whether lump sum alimony is for support or for equitable distribution. See Guida v. Guida, 870 So.2d 222, 224 (Fla. 2d DCA 2004). Where, as here, the parties' court-approved MSA does not specify the nature of the lump sum alimony, the court must make the characterization in the context of this enforcement proceeding. Substance, not form, controls. See Salomon v. Salomon, 196 So.2d 111, 113 (Fla.1967); Underwood, 64 So.2d at 288; Rubio v. Rubio, 347 So.2d 1093, 1095 (Fla. 2d DCA 1977). The trial court should assess whether (1) alimony payments are made in exchange for a property interest, (2) the payments are modifiable, (3) the payments terminate upon remarriage or death, and (4) the payments are deductible from the payor's federal income tax and taxable to the payee. See Braswell v. Braswell, 881 So.2d 1193, 1198 (Fla. 3d DCA 2004).

Exchange for Property Interest
A conclusive test to determine whether periodic payments are nonmodifiable property payments or modifiable support payments examines whether they are made in exchange or consideration for a transfer of property interests. Jantzen v. Cotner, 513 So.2d 683 (Fla. 3d DCA 1987). "For an award of money to be considered a property settlement and not alimony [for support] it must clearly appear to be so from the final judgment." Goerlich v. Goerlich, 358 So.2d 895, 896 (Fla. 2d DCA 1978) (citing Brisco v. Brisco, 355 So.2d 506 (Fla. 2d DCA 1978)); see Witter v. Witter, 443 So.2d 417, 418 (Fla. 2d DCA 1984) (holding alimony provision was modifiable support because it did not state specifically *137 that it was part of an exchange of property rights). The lack of evidence suggesting that the payments are in exchange for property rights or obligations renders contempt an available remedy for nonpayment. See English, 462 So.2d at 878; Cox v. Cox, 462 So.2d 122, 123 (Fla. 2d DCA 1985).

Modifiability
"[A] true property settlement agreement, in which one party gives up valuable property rights in exchange for the right to receive periodic payments, is not subject to modification." O'Hara v. O'Hara, 564 So.2d 1230, 1231 (Fla. 2d DCA 1990) (citing Hughes v. Hughes, 553 So.2d 197 (Fla. 2d DCA 1989)). Permanent periodic alimony, which is always for support, is subject to modification. See Nethery v. Nethery, 951 So.2d 976 (Fla. 4th DCA 2007); Smith v. Smith, 689 So.2d 1312 (Fla. 5th DCA 1997). By definition, however, lump sum alimony establishes a fixed monetary obligation that vests immediately, is nonmodifiable, and does not terminate when the payee remarries or when the payor dies. Borchard v. Borchard, 730 So.2d 748, 751 (Fla. 2d DCA 1999). Because lump sum alimony may be used for support, but is always nonmodifiable, the nonmodifiability of the payments is not a reliable indicator that they are intended as equitable distribution. Additionally, parties can agree to nonmodifiable support. Cf. Nethery, 951 So.2d at 976-77 (stating that absent agreement between husband and wife, permanent periodic alimony award could not be nonmodifiable).

Terminability
Generally, permanent periodic alimony for support is limited to the traditional requirement of termination upon the obligor's death. Hannon v. Hannon, 740 So.2d 1181, 1184 (Fla. 4th DCA 1999) (citing O'Malley v. Pan Am. Bank of Orlando, 384 So.2d 1258 (Fla.1980); Aldrich v. Aldrich, 163 So.2d 276 (Fla.1964)). Thus, language providing termination of payments upon death or remarriage is consistent with support alimony. See Woodworth v. Woodworth, 385 So.2d 1024, 1026 (Fla. 4th DCA 1980). "[T]he well established rule is that an obligation to pay alimony ceases upon the death of the obligor, unless that person expressly agrees that the estate shall be bound to continue to pay alimony after his death." O'Malley, 384 So.2d at 1260.
But, payments that terminate upon remarriage or death pursuant to an MSA are not necessarily for support. See, e.g., Salomon, 196 So.2d at 113-14 (upholding decision that payments to wife under "property settlement agreement" as long as she resided on certain property, and terminable upon her remarriage or the husband's death, were not support alimony subject to modification because they conceivably were set up as special fund for upkeep of residence). Similarly, parties can agree to support payments to continue after the obligor's death. Porter v. Porter, 521 So.2d 290, 291 (Fla. 1st DCA 1988); see Hannon, 740 So.2d at 1184. The MSA between Ms. Diaz and Mr. Pipitone specifically provides that the payments survive either party's death.

Deductibility
A provision that alimony payments are deductible to the husband and taxable to the wife for federal income tax purposes may indicate that the payments are for support. See Kidd v. Kidd, 695 So.2d 439, 440 (Fla. 4th DCA 1997); Robinson v. Robinson, 647 So.2d 160, 161 (Fla. 1st DCA 1994); Jantzen, 513 So.2d at 684. These same tax consequences, however, may attend payments made for equitable distribution. I.R.C. § 71. In this case, *138 the MSA specifically provides that the lump sum alimony payments are deductible to Mr. Pipitone and taxable to Ms. Diaz.[2]

Context Within Whole Agreement
In interpreting the MSA terms, the trial court must look beyond a single paragraph to the nature and substance of the whole agreement. Waddell v. Waddell, 305 So.2d 30 (Fla. 3d DCA 1974); see also Hyotlaine v. Hyotlaine, 356 So.2d 1319, 1320 (Fla. 4th DCA 1978). Normally, the terms used by the parties reflect their intent, but are not conclusive if the context unmistakably shows an intent not readily apparent on the face of the MSA. Woodworth, 385 So.2d at 1026. Here, it appears significant that the separate child support provision in section XX of the MSA and the $100,000 lump sum alimony provision in section VI include the words "[t]ime is and shall be of the essence." The parties omitted these words from the $75,000 lump sum alimony provision that is expressly identified as consideration for property. Perhaps the $100,000 lump payment is spousal support because, like the child support, it requires timely payment to ensure timely payment of expenses.
Also noteworthy is the fact that the MSA sets forth the two lump sum alimony provisions in separate paragraphs. The first makes no mention of any exchange or property interests, whereas the second specifically states that it is in consideration for Mr. Pipitone's obligation on a credit line. Such separate treatment indicates that the former is support and the latter is equitable distribution. See Joyce v. Joyce, 563 So.2d 1126, 1127 (Fla. 1st DCA 1990) (holding alimony provision was intended as support rather than property distribution where it was in a separate section and did not indicate exchange of property interests for payments); Jantzen, 513 So.2d at 684.

Remedies
On remand, the trial court's determination of available remedies for Mr. Pipitone's nonpayment will rest on its conclusion as to whether the amounts are for support or equitable distribution. The trial court has discretion to enforce payment "by such equitable remedies as the trial court may determine to be appropriate or necessary." Doyle v. Doyle, 789 So.2d 499, 503 (Fla. 5th DCA 2001) (quoting Smithwick v. Smithwick, 343 So.2d 945, 947 (Fla. 3d DCA 1977)); see also State ex rel. Pittman v. Stanjeski, 541 So.2d 1214, 1216 (Fla. 2d DCA 1989). Although the lien provision of the MSA is not an exclusive remedy, the trial court may certainly assess whether the lien is an appropriate remedy among others it may consider.
*139 Reversed and remanded for further proceedings consistent with this opinion.
ALTENBERND and CRENSHAW, JJ., Concur.
NOTES
[1] Lump sum alimony can generate complex issues relating to taxation, see Sharp v. Comm'r of Internal Revenue, T.C. Summ.Op. 2004-27, 2004 WL 440429 (U.S.Tax Ct.); Kidd v. Kidd, 695 So.2d 439, 440 (Fla. 4th DCA 1997), bankruptcy discharge, see Meeks v. Meeks, 964 So.2d 185 (Fla. 2d DCA 2007); Masters v. Masters, 443 So.2d 388, 389 (Fla. 2d DCA 1983), and enforcement by contempt, see Mattera v. Mattera, 629 So.2d 1106, 1108 (Fla. 4th DCA 1994); Owens v. Owens, 578 So.2d 444, 445 (Fla. 1st DCA 1991). See also Borchard v. Borchard, 730 So.2d 748, 752 (Fla. 2d DCA 1999) (discussing history, use, and implications of lump sum alimony).
[2] "Alimony" can be deductible from the payor's income for federal income tax purposes and includible in the payee's taxable income if it meets all of the elements of Internal Revenue Code § 71; that it is (1) cash received by or on behalf of a spouse, (2) under a divorce or separation instrument, (3) between parties who do not live in the same household, (4) where the alimony is not designated as not includible in gross income or allowable as a deduction, (5) where the payments are not fixed as child support, (6) where the payments cease upon the payee's death and, (7) where the payments are not impermissibly front loaded. Melvyn B. Frumkes, Is It Alimony as Defined in I.R.C. § 71?; Common Errors as to Whether a Stream of Payments are Taxable/Deductible Part I, 74 Oct. Fla. B.J. 76 (2000). The rules do not require that the payments be designated as support to be deductible. However, payments are not deductible if they do not terminate upon the payee's death. I.R.C. § 71; see Sharp v. Comm'r of Internal Revenue, T.C. Summ.Op. 2004-27, 2004 WL 440429 (U.S.Tax Ct.2004).