NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

NICOLA HERBST,                    )
                                  )
          Appellant,              )
                                  )
v.                                )        Case No. 2D13-2745
                                  )
PETER HERBST,                     )
                                  )
          Appellee.               )
_____)

Opinion filed October 1, 2014.

Appeal from the Circuit Court for Pinellas
County; Peter Ramsberger, Judge.

Peter N. Meros of Meros, Smith,
Lazzara, Brennan & Olney, P.A.,
St. Petersburg, for Appellant.

Ceci Culpepper Berman of
Brannock & Humphries, Tampa,
for Appellee.

SILBERMAN, Judge.

        Nicola Herbst, the Former Wife, and Peter Herbst, the Former Husband,

entered into a marital settlement agreement (MSA) that provided for nonmodifiable

alimony payable to the Former Wife for the remainder of her life.  But when the parties

divorced and the Former Wife remarried another, the Former Husband moved to have

his alimony obligation terminated.  The Former Wife seeks review of postdissolution

orders terminating the Former Husband's alimony obligation, establishing the Former Husband's overpayment of alimony, and setting off the Former Wife's attorney's fee and cost award against that overpayment. We reverse because the MSA unambiguously requires payment continuing beyond the Former Wife's remarriage and therefore controls over the statutory provision relied on by the trial court.

The parties had been married twenty-two years and had four minor children when the Former Wife filed her petition for dissolution of marriage. In the course of the divorce proceedings, the parties attended mediation conferences and ultimately entered into the MSA. Paragraph 7 of the MSA awarded the Former Wife alimony as follows:

> Alimony--
>
> The Petitioner[1] agrees to pay the Respondent alimony in the amount of $4,500 beginning the date of the final judgment and continuing for the life of the Petitioner. The parties agree that this alimony is non-modifiable.

The MSA was incorporated into the final judgment of dissolution which was rendered in August 2009.

The Former Wife remarried in July 2010, and the Former Husband stopped paying her alimony when he learned of the remarriage. The Former Wife subsequently filed a petition to enforce the alimony provision of the MSA. The Former Husband responded by filing a motion to terminate alimony and for return of the alimony he paid after the date of the Former Wife's remarriage.

---

[1]The parties have agreed that this sentence erroneously designated "[t]he Petitioner" as the obligor and "the Respondent" as the obligee. There is no dispute that the Former Husband agreed to pay monthly alimony to the Former Wife.

The trial court entered an order determining that the alimony provision was ambiguous because it failed to specify whether the alimony (1) was in the nature of support or equitable distribution and (2) continued in the event of the Former Wife's remarriage. Thus the court ordered that an evidentiary hearing would be held to adduce parol evidence on those issues.

At the onset of the evidentiary hearing, the parties stipulated that any evidence regarding discussions at the mediation conference was confidential and would not be adduced. The Former Wife testified that the parties agreed the Former Husband would pay the Former Wife alimony for her entire life and she could never seek more or get less. The Former Husband testified that his understanding was the alimony would terminate if the Former Wife cohabited or remarried.

The trial court found the parties' testimony to be "self-serving" and did not consider the parol evidence in ruling on the parties' motions. Instead, it based its decision on a legal construction of the MSA. The court determined that the alimony was in the nature of spousal support[2] and was intended to be permanent alimony which is governed by section 61.08, Florida Statutes (2011). The court noted that section 61.08(8) provides for the termination of permanent alimony "upon the death of either party or upon the remarriage of the party receiving alimony." Notwithstanding that the alimony provision specified that the Former Wife would receive nonmodifiable alimony for life, the court concluded that the alimony provision did not expressly address termination. The court held that section 61.08(8) therefore applied and entered an order

---

[2]The parties do not dispute this finding.

finding that the alimony terminated upon the Former Wife's remarriage. The court reserved jurisdiction to determine the amount of alimony the Former Husband overpaid.

After another hearing, the court entered an order finding that the Former Husband had overpaid $50,207.42 in alimony. The court also awarded $26,000 in attorney's fees and costs to the Former Wife. The court ordered the Former Husband to pay $7500 within thirty days and reserved jurisdiction to address payment of the remaining amount. In October 2013, the trial court entered a final order setting off the remaining $18,500 in attorney's fees and costs against the Former Husband's award of $50,207.42 for alimony overpayment.

On appeal, the Former Wife argues that the trial court erred by concluding that the alimony terminated upon the Former Wife's remarriage pursuant to section 61.08(8). The Former Wife asserts that the provision in the MSA obligating the Former Husband to pay nonmodifiable alimony "for the life of [the Former Wife]" controlled. The Former Wife additionally argues that the trial court erred in setting off her attorney's fee and cost award against the Former Husband's alimony overpayment.

It is well-settled in dissolution of marriage proceedings that the parties may enter into settlement agreements imposing obligations the trial court could not otherwise impose under the applicable statutes. Taylor v. Lutz, 134 So. 3d 1146, 1148 (Fla. 1st DCA 2014). Thus, if the parties' MSA requires payment beyond the recipient's remarriage, the agreement's terms will control over section 61.08. Id. at 1148; Porter v. Porter, 521 So. 2d 290, 291 (Fla. 1st DCA 1988).

We review the trial court's interpretation of the MSA de novo. See Pipitone v. Pipitone, 23 So. 3d 131, 134 (Fla. 2d DCA 2009). Such agreements are

- 4 -

construed the same as any other contract. Taylor, 134 So. 3d at 1148. If the terms of the agreement are unambiguous, they are treated as evidence of the parties' intention and the agreement's meaning. In construing the terms of the agreement, the court may not isolate a single term or phrase. Instead, the goal is to come to a reasonable interpretation of the language in the context of the entire agreement. Id.

In this case the MSA unambiguously addresses the circumstances under which alimony may be terminated by obligating the Former Husband to pay alimony "for the life of the [Former Wife]" and by making it nonmodifiable. While this provision does not expressly address remarriage or cohabitation, it implicitly does so by requiring that payments continue in a specified amount until the Former Wife dies. Because this provision requires payment continuing beyond the Former Wife's remarriage, its terms control over section 61.08(8).

The facts of this case are analogous to those in Porter. In Porter, the parties' marital settlement agreement provided for alimony for the former wife's life and stated that it "would 'terminate only upon the death of wife or remarriage of the parties to each other.' " 521 So. 2d at 291. When the former wife remarried a man who was not the former husband, the former husband stopped paying alimony. The former wife filed a motion for contempt or for entry of a judgment on the arrearage. The court entered a judgment on the arrearage based on its conclusion that the terms of the agreement required the payment of alimony beyond the wife's remarriage to a third party.

On appeal, the First District agreed that the terms of the marital settlement agreement prevailed because they were contrary to the law providing for termination

upon remarriage.  Id.; see also Taylor, 134 So. 3d at 1147-48 (construing a marital settlement agreement which required the former husband to pay "Bridge-the-Gap alimony which is non-modifiable in the amount of $500.00 a month for three (3) years" to preclude termination when the former wife remarried within that three years).

We reject the Former Husband's argument that the parties' failure to expressly address remarriage in the alimony provision makes it ambiguous.[3]  The Former Husband relies on a line of cases requiring settlement agreements to expressly provide that alimony does not terminate upon the death of the obligor in order for it to continue after the obligor's death.  See O'Malley v. Pan Amer. Bank of Orlando, N.A., 384 So. 2d 1258, 1260 (Fla. 1980); Hannon v. Hannon, 740 So. 2d 1181, 1184 (Fla. 4th DCA 1999).  But those cases apply "the well established rule [] that an obligation to pay alimony ceases upon the death of the obligor, unless that person expressly agrees that the estate shall be bound to continue to pay alimony after his death."  O'Malley, 384 So. 2d at 1260.  Thus, language providing that the husband shall pay alimony "until wife becomes remarried or deceased" does not indicate an intent to bind the husband's estate to continue to pay alimony after his death.  Id. at 1259-60; see also Farrar v. Keyser, 212 So. 2d 677, 678 (Fla. 1st DCA 1968) (holding that there was no intent to bind the former husband's estate to pay alimony after his death in language stating that the "alimony will cease upon the death or remarriage of [the former wife]").

---

[3]Notwithstanding the trial court's initial determination that the MSA was ambiguous, its ruling as to the dispositive issue was based on its interpretation of the contract language and statute and not on the parol evidence that it rejected as "self-serving."

This case does not involve termination upon the obligor spouse's death and the liability of that spouse's estate as did O'Malley. Because this case does not involve binding the Former Husband's estate to continue paying alimony upon his death in contravention of well-settled common law, O'Malley and similar cases relied upon by the Former Husband are inapplicable. Instead, this case addresses the issue of termination upon the obligee spouse's remarriage as did Taylor and Porter, and we conclude that the reasoning in those cases is correct.

In summary, the terms of the alimony provision in the parties' MSA unambiguously obligate the Former Husband to pay the Former Wife nonmodifiable alimony until she dies. Because this provision requires payment beyond the Former Wife's remarriage, its terms control over section 61.08(8). Thus, the trial court erred in concluding that section 61.08(8) applied to provide for termination of alimony upon the Former Wife's remarriage.

We therefore reverse the orders terminating the Former Husband's alimony obligation, establishing the Former Husband's overpayment of alimony, and setting off the Former Wife's attorney's fee and cost award against that overpayment. On remand the trial court should enter an order granting the Former Wife's petition to enforce the alimony provision of the MSA and awarding her any other relief she is due.

Reversed and remanded.


MORRIS and SLEET, JJ., Concur.