DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

JONI BARTOLOTTA,

Appellant,

v.

ALAN BARTOLOTTA,

Appellee.

No. 2D23-645

_____

February 28, 2024

Appeal from the Circuit Court for Pinellas County; Steve D. Berlin, Judge.

Paul E. Parrish of Parrish Law, P.A., Satellite Beach, for Appellant.

Raleigh W. Greene, IV, and Alexander M. Bottone of Greene & Greene, Attorneys at Law, St. Petersburg, for Appellee.

CASANUEVA, Judge.

Presented in this appeal is a question involving the interpretation of a marital settlement agreement (MSA) entered over two decades ago. We interpret the MSA by present day rules. And today's rules require that

we reverse the trial court's order and remand the matter for further proceedings.

## I. Background

In 2001, Alan Bartolotta (the Former Husband) petitioned for dissolution of marriage from Joni Bartolotta (the Former Wife). In an effort to resolve their legal marital issues, the parties entered into a written contract—the MSA. The MSA included several provisions designed to distribute marital assets, discuss the ongoing care of their two minor children, and settle any personal and joint liabilities. In 2002, the trial court entered the Final Judgment of Dissolution of Marriage, which incorporated the MSA.

Twenty years later, the Former Wife moved to reopen the dissolution and to enforce the MSA. The provision she sought to enforce is located in article V and is entitled "Personal Property." The provision states the following:

> 5.4 HUSBAND'S RETIREMENTS. Husband's retirement benefits and entitlements through his 457 plan through his employment with Pinellas County Florida shall remain his sole property free and clear from any claim of Wife. The Florida Retirement System pension/retirement benefits shall be equally distributed between the parties by way of QDRO if necessary and applicable. If a QDRO will not accomplish equal division or the plan administrator will not acknowledge such an Order, then the parties agree to rework this Agreement in order to carry out their intention(s) for distribution of this plan. The Wife's share of the 457 plan has been equitably distributed through other assets.

The Former Wife's motion asserted that the Former Husband began receiving benefits from his Florida Retirement System (FRS) pension in 2021 but that he had not distributed any benefits to her. The Former Wife argued that pursuant to provision 5.4, the parties "agreed that distributions from this retirement plan would be distributed equally,"

2

and therefore, she is entitled to half of the FRS benefits paid to the Former Husband—including those benefits which accrued after the Final Judgment. The Former Husband, however, argued that provision 5.4 provides that the Former Wife is entitled only to half of the marital portion of the FRS benefits, which includes only the benefits accrued while the parties were married.

In resolving the dispute, the trial court made several determinations that inform our review. The trial court rejected "offers of parol evidence," concluding that the MSA "is clear on its face." In this context, we interpret the trial court's usage of "clear" to mean unambiguous. Despite this determination, the trial court determined that the words in the MSA must be understood "as they existed at the time they were written" by looking toward "various authorities." Those authorities included the statutory definition of a marital asset as provided by section 61.075(5)(a), Florida Statutes (1993), and section 61.076(1), Florida Statutes (1993).[1] The trial court concluded that the "plain reading" of the challenged language, "is that the Former Husband intended to give the Former Wife half of what he had at the time. No more, no less."

Whether that meaning may be legally affixed to the parties' MSA is the issue presently before this court.

## II. Discussion

---

[1] Section 61.075(5)(a) provided that marital assets are assets acquired during the marriage. The section has since been updated and the definition for marital assets is now provided by section 61.075(6)(a).

Section 61.076(1) provides that "[a]ll vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs are marital assets subject to equitable distribution."

3

We review the issue before us de novo. *See Suess v. Suess*, 289 So. 3d 525, 529 (Fla. 2d DCA 2019) (citing *Pipitone v. Pipitone*, 23 So. 3d 131, 134 (Fla. 2d DCA 2009)). We turn first to the trial court's conclusion that the MSA was clear, and therefore, the use of parol evidence to determine its meaning was unnecessary.

An MSA is construed like any other contract, meaning parties are free to enter into an MSA that may impose obligations or restrictions that would not otherwise be imposed under Florida law. *See Herbst v. Herbst*, 153 So. 3d 290, 292 (Fla. 2d DCA 2014) ("[P]arties may enter into settlement agreements imposing obligations the trial court could not otherwise impose under the applicable statutes."); *Taylor v. Lutz*, 134 So. 3d 1146, 1148 (Fla. 1st DCA 2014) ("A marital settlement agreement is a contract subject to interpretation like any other contract." (quoting *Avellone v. Avellone*, 951 So. 2d 80, 83 (Fla. 1st DCA 2007))). "Where an agreement's terms are unambiguous, a court must treat the written instrument as evidence of the agreement's meaning and the parties' intention"—thus requiring a reviewing court to first look only to the words in the MSA to decipher the parties' intentions. *Avellone*, 951 So. 2d at 83 (citing *Delissio v. Delissio*, 821 So. 2d 350, 353 (Fla. 1st DCA 2002)).

However, "when a contract's terms are incomplete or facially ambiguous," the meaning of contractual language may be established by parol evidence. *RX Sols., Inc. v. Express Pharmacy Servs., Inc.*, 746 So. 2d 475, 476 (Fla. 2d DCA 1999) (citing *Newbern v. Am. Plasticraft, Inc.*, 721 So. 2d 351 (Fla. 2d DCA 1998)). And "when a contract is rendered ambiguous by some collateral matter, it has a latent ambiguity, and the court must hear parol evidence to interpret the writing properly." *Id.* (citing *Landis v. Mears*, 329 So. 2d 323 (Fla. 2d DCA 1976)). "[A] latent

4

ambiguity occurs 'where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.' " *Id.* at 477 (quoting *Ace Elec. Supply Co. v. Terra Nova Elec., Inc.,* 288 So. 2d 544, 547 (Fla. 1st DCA 1973)).

Here, neither party raised an issue with the trial court's legal determination that the MSA was clear on its face, nor did they argue that a latent ambiguity existed such that the court should have considered parol evidence.[2]  The Former Wife, however, asserts that the trial court's interpretation of the plain language of the MSA and its reliance on sections 61.075(5)(a) and 61.076(1) was erroneous.  Two prior opinions of this court direct our analysis of the instant issue.  The first is *Herbst.*

In *Herbst,* the MSA provision at issue determined alimony payments.  153 So. 3d at 291.  It set forth the following: "The Petitioner agrees to pay the Respondent alimony in the amount of $4,500 beginning the date of the final judgment and continuing for the life of the Petitioner. The parties agree that this alimony is non-modifiable." *Id.* (footnote omitted).  A year after the final judgment of dissolution, the former wife remarried.  *Id.*  After learning of her remarriage, the former husband stopped paying alimony.  *Id.*  Following the former wife's motion to enforce the alimony provision of the MSA, the trial court determined that the alimony provision was intended to be permanent alimony governed by section 61.08, Florida Statutes (2011).  *Id.*  Thus, the trial court concluded that pursuant to section 61.08(8), the alimony terminated upon the former wife's remarriage.  *Id.* at 292.

---

[2] Because the issue was not raised, any argument that the trial court should have accepted parol evidence to ascertain the agreement's meaning is not preserved for our review.

Writing for this court, Judge Silberman noted that "parties may enter into settlement agreements imposing obligations the trial court could not otherwise impose under the applicable statutes. . . . [T]he agreement's terms will control . . . ." *Id.* (citing *Taylor*, 134 So. 3d at 1148). This court concluded that the terms of the alimony provision unambiguously required the former husband to pay nonmodifiable alimony until the former wife died. *Id.* at 293. And because the provision unambiguously imposed an obligation beyond that which the trial court could impose under the applicable statutes, the terms of the MSA controlled over section 61.08(8). *Id.* Therefore, the trial court erred by determining the alimony payments ended when the former wife remarried—a termination date provided by Florida statute. *Id.*

Similarly, in *Suess*, this court held that the trial court wrongly reached outside the language of the MSA when interpreting its meaning. 289 So. 3d at 530. The parties in *Suess* entered into an MSA which provided the following: "Wife will receive 50% of all retirement benefits from husband (City of Ocala, Ocala Police, and State of Florida)." *Id.* at 527. About seven years after dissolution, a disagreement arose regarding the former husband's retirement accounts. *Id.* The former wife sought an order enforcing her right to 50% of all retirement benefits that "accrued during and after the parties' marriage." *Id.* The former husband disagreed, arguing that under the terms of the MSA the former wife was only entitled to fifty percent of the retirement benefits that accrued during the marriage. *Id.* at 528. In denying the former wife's requested relief, the trial court determined that the MSA was clear and unambiguous. *Id.* The court concluded that the former wife "was only entitled to the marital portion of the Former Husband's FRS Pension as

6

defined in section 61.075(7), Florida Statutes (2009),"[3] and was therefore only entitled to half of the benefits earned during the parties' marriage. *Id.*

Writing for this court, Judge Smith opined that the trial court's reliance on section 61.075(7) in interpreting the MSA was error. *Id.* at 529. This court reasoned that the retirement provision at issue was clear and unambiguous, and "no language, express or otherwise, . . . indicat[ed] that the parties intended for the Former Wife to only receive fifty percent of the Former Husband's retirement benefits that accrued during the marriage." *Id.* at 530. The unambiguous language in the MSA entitled the former wife "to fifty percent of *all* the Former Husband's retirement accounts, including those accrued during and after the marriage"—an obligation beyond that which the trial court could impose under the applicable statutes. *Id.* at 531. Thus, the terms of the MSA controlled over section 61.075(7). *Id.*

Applying *Herbst* and *Suess* to the instant case, we conclude that nothing in provision 5.4, or elsewhere in the MSA, indicates that the parties intended the Former Wife to only receive half of the benefits which accrued during the marriage. To the contrary, the language provides that "Florida Retirement System pension/retirement benefits shall be equally distributed between the parties . . . ." This language clearly and unambiguously provides that the benefits—in their entirety— are to be distributed between the Former Wife and the Former Husband equally. Because this provision obligates the Former Husband to pay the

_____

[3] Section 61.075(7) prescribes a cut-off date for determining marital assets to be "the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage."

Former Wife benefits accrued during and after the marriage, the terms of the MSA control over sections 61.075(5)(a) and 61.076(1). Therefore, the trial court's reliance upon statutory provisions in construing the MSA's meaning was error.

### III.  Conclusion

Although we may surmise that the statutory provision providing that a pension is a marital asset—in conjunction with the associated cut-off date for marital assets—was in the drafters' minds when penning the provision at issue, we are bound by what is actually written in the agreement to ascertain the parties' intentions. *See Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995) ("[A] court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties."). On the record before us, we reverse and remand for further proceedings. In doing so, we do not address whether a latent ambiguity exists in the parties' contract, nor do we suggest an outcome.

Reversed and remanded.

SILBERMAN and SMITH, JJ., Concur.

_____

Opinion subject to revision prior to official publication.