DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT
_____

BETH HELMICK, individually and as assignee of
Catharine Anderman,

Appellant,

v.

AARON M. TAYLOR,

Appellee.

No. 2D22-3658
_____

April 3, 2024

Appeal from the Circuit Court for Sarasota County; Charles E. Williams, Judge.

Joel W. Walters and Bailey Lowther of Walters Levine & DeGrave, Sarasota, for Appellant.

David A. Wallace and Brian D. Goodrich of Bentley Goodrich Kison, P.A., Sarasota, for Appellee.

LABRIT, Judge.

Beth Helmick sued her former son-in-law Aaron Taylor for breach of contract. Mrs. Helmick alleged that she was an intended third-party beneficiary of a marital settlement agreement (MSA) between Aaron and Mrs. Helmick's daughter Karen. The trial court entered final summary judgment in Aaron's favor. Because the MSA is unambiguous and lacks a clear intent to benefit Mrs. Helmick, we affirm the judgment.

## Background

Aaron and Karen married in 2008. During the marriage, Mrs. Helmick and her mother Catharine Anderman loaned Aaron certain sums of money.[1] Aaron and Karen later divorced, and they executed the MSA in 2018 at the conclusion of their dissolution proceedings. The MSA identifies Aaron and Karen as the parties to the agreement and states that they "made [the MSA] to settle once and for all what is owed to each other and what can be expected from each other."

Consistent with this purpose, the first two paragraphs of the MSA divide up the couple's personal property and real property interests. The third paragraph then explains that "the parties incurred certain debts and obligations" during their marriage, and it apportions them between the parties. The MSA lists six marital debts that Aaron "shall pay"—a mortgage, two credit card debts, a boat loan, the loan from Mrs. Helmick, and the loan from Mrs. Anderman—and six marital debts that Karen "shall pay"—four credit card debts and two student loans. The remainder of the MSA divides up marital assets; sets forth the parties' agreements on alimony, attorneys' fees, and other matters not pertinent to this appeal; provides that Florida law governs; and states that its terms "shall inure to the benefit of and be binding on the respective heirs, next of kin, executors and administrators of the parties and any benefitted third parties."

Approximately twenty-one months after Aaron and Karen signed the MSA, Mrs. Helmick sued Aaron for its alleged breach. Mrs. Helmick claimed that Aaron failed to pay the amounts he agreed to pay her and

---

[1] The precise amount loaned is unclear from the record, but the amount is immaterial to the determinative issue here—whether Mrs. Helmick is an intended beneficiary of the MSA.

Mrs. Anderman under the MSA.[2]  Mrs. Helmick also alleged that "it was the clear and manifest intent" of the contracting parties to "primarily and directly benefit" her, and she sought to enforce the terms of the MSA as an intended third-party beneficiary.

Aaron moved for summary judgment on Mrs. Helmick's claim, arguing that neither she nor Mrs. Anderman were intended beneficiaries per the unambiguous language of the MSA.  Mrs. Helmick filed her own summary judgment motion in response, agreeing that the MSA was unambiguous but arguing that it "clearly reflects an intention to benefit" her and her mother "by virtue of its clear language providing for payment of agreed amounts."  After a hearing, the trial court granted Aaron's motion and denied Mrs. Helmick's motion.  It found that "the unambiguous purpose of the MSA was to divide up what Aaron and Karen Taylor understood were their assets and existing liabilities," and that the MSA did not express a clear intent to benefit Mrs. Helmick or Mrs. Anderman.  The trial court entered final judgment in Aaron's favor based on this finding.  Mrs. Helmick timely appealed.

## Discussion

We review the trial court's summary judgment ruling and its interpretation of the MSA de novo.  *See Fitness Int'l, LLC v. 93 FLRPT, LLC*, 361 So. 3d 914, 918 (Fla. 2d DCA 2023).  To establish her claim for breach of the MSA as an alleged third-party beneficiary, Mrs. Helmick had to prove four elements: "(1) existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit [her]; (3) breach of the contract by a contracting party; and (4) damages to [her] resulting from the breach."  *OTI Fiber, LLC v.*

_____

[2] Mrs. Helmick received an assignment of Mrs. Anderman's loan interest and sued Aaron to recover both loan amounts.

3

*CenterState Bank, N.A.*, 326 So. 3d 743, 747 (Fla. 2d DCA 2021) (quoting *Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 148 (Fla. 2016)).  This appeal involves the second element—the contracting parties' intent—which we hold is lacking.  We need look no further than the terms of the MSA to reach this holding.

Marital settlement agreements "are construed the same as any other contract." *Herbst v. Herbst*, 153 So. 3d 290, 292 (Fla. 2d DCA 2014).  Thus, "[i]f the terms of the agreement are unambiguous, they are treated as evidence of the parties' intention and the agreement's meaning." *Id.*  Mrs. Helmick and Aaron agree that the terms of the MSA are unambiguous, but they urge us to draw very different conclusions from those terms in discerning the contracting parties' intent.

For her part, Mrs. Helmick argues that because the third paragraph of the MSA identifies her and Mrs. Anderman by name, states the amounts owed to each, and provides that Aaron "shall pay" those amounts, the contracting parties clearly intended to bestow a benefit on her and Mrs. Anderman.  She bases this interpretation on a few lines within the MSA.  But we "may not isolate a single term or phrase" in determining the contracting parties' intent because "the goal is to come to a reasonable interpretation of the language in the context of the entire agreement." *Id.*

When read in its entirety, the MSA did precisely what Aaron and Karen stated that it would: it settled what they "owed to each other" and "expected from each other" after their marriage dissolved.  In line with this purpose, the third paragraph of the MSA established how the contracting parties agreed to satisfy their marital debts.  They divvied those debts up and identified which creditors each party would pay to satisfy the debts.  The MSA listed Mrs. Helmick and Mrs. Anderman by

name; it also listed all but one of the parties' other creditors by name. In short, the debts owed to Mrs. Helmick and Mrs. Anderman were treated in the same manner as were the debts owed to credit card companies, student loan providers, and other commercial creditors. And the intent behind these undisputedly unambiguous provisions of the MSA was to memorialize who would pay which creditor, not to primarily and directly benefit any creditor as a third-party beneficiary.[3] *See Greenacre Props., Inc. v. Rao*, 933 So. 2d 19, 23 (Fla. 2d DCA 2006); *Hunt Ridge at Tall Pines, Inc. v. Hall*, 766 So. 2d 399, 400–01 (Fla. 2d DCA 2000); *see also Renny v. Bertoloti*, 252 So. 3d 761, 765–66 (Fla. 4th DCA 2018) ("Had the [settlement agreement] truly been intended to release Bertoloti . . . it would have said so more explicitly."); *Se. Fid. Ins. v. Suwannee Lumber Mfg. Co.*, 411 So. 2d 950, 951 (Fla. 1st DCA 1982) (noting that the "mere listing" of a lienholder on the face of an insurance contract does not make the lienholder a third-party beneficiary).

We also hesitate to adopt a rule presuming that creditors who are specifically named in a marital settlement agreement for purposes of

---

[3] This factor distinguishes this case from *Manz v. Palomino* (*In re Palomino*), 355 B.R. 349 (Bankr. S.D. Fla. 2006), a nonbinding bankruptcy court decision Mrs. Helmick urges us to follow. She contends that the MSA in *Palomino* is "effectively identical" to the MSA here. But the MSA in *Palomino* included a provision for the direct and primary benefit of the former wife's divorce attorney. *See id.* at 352, 358. Through that provision, the former husband agreed to pay the attorney an agreed-upon sum within ninety days from the date of the agreement "in full and satisfactory settlement of all attorneys' fees orders, awards, entitlements, and requests to date." *Id.* at 352. And the parties reached this agreement while the amount of attorneys' fees the former husband owed was still in dispute. *See id.* Here, the MSA simply restates the parties' preexisting debts, and it contains no payment terms or other language that conveys a new or additional benefit on any of the parties' creditors. Thus, the MSA could not have been intended for the creditors' primary and direct benefit, in sharp contrast to the MSA in *Palomino*.

dividing up marital debts are intended third-party beneficiaries of such agreements. Marital settlement agreements "are highly favored in the law," *Watts v. Goetz,* 311 So. 3d 253, 259 (Fla. 2d DCA 2020), and the Florida Family Law Rules of Procedure promote the mediation and amicable resolution of family law matters, *see, e.g.,* Fla. Fam. L. R. P. 12.740. Permitting creditors who are specifically named in marital settlement agreements to enforce such agreements—without the contracting parties having clearly intended this result—seemingly would cut against these interests and could discourage parties from settling at the risk of exposing themselves to additional litigation and further liability. Relatedly, such a rule could revive stale or nonviable claims that creditors might not have been able to pursue or prove but for the parties divorcing and dividing up their debts by agreement. Our holding avoids these contingencies, while remaining true to the principle that a third party "is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party." *See Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.,* 647 So. 2d 1028, 1031 (Fla. 4th DCA 1994).

The trial court correctly determined that the MSA expresses no such intent to benefit Mrs. Helmick or her mother. We therefore affirm the final judgment on Mrs. Helmick's claim under the MSA.

Affirmed.

LaROSE and KHOUZAM, JJ., Concur.

———————————————

Opinion subject to revision prior to official publication.